# ATLANTIC TRANSPORT COMPANY OF WEST VIRGINIA *v.* IMBROVEK.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 215.   Argued January 29, 30, 1914.—Decided May 25, 1914.

As a general principle, the test of admiralty jurisdiction in tort in this country is locality.

Admiralty has jurisdiction of a suit *in personam* by an employé of a stevedore against the employer to recover for injuries sustained through the negligence of the latter while engaged in loading a vessel lying at the dock in navigable waters.

The precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history, *The Blackheath*, 195 U. S. 361, and *quære* whether the admiralty jurisdiction extends to a case where the tort is not of a maritime nature although committed on navigable waters.

A tort committed on a vessel in connection with a service thereto may be maritime even if there is no fault on the part of, or injury to, the ship itself.

Stevedores are now as clearly identified with maritime affairs as are the mariners themselves.

Whether the employer failed to provide a safe place to work is a question properly determinable by the Circuit Court of Appeals in last resort, and this court will not disturb such a finding if concurred in by both courts below and justified by the record.

193 Fed. Rep. 1019, affirmed.

THE facts, which involve the admiralty jurisdiction of the United States courts over suits for personal injuries sustained on a vessel in port while being loaded by a stevedore, and questions of negligence of the stevedore, are stated in the opinion.

*Mr. Edward Duffy*, with whom *Mr. Nicholas P. Bond* and *Mr. Ralph Robinson* were on the brief, for petitioner:

Admiralty has not jurisdiction; locality is not the sole test of jurisdiction; the tort is not of a maritime nature; the master did not fail to furnish a safe place to labor; failure to use pins was not the proximate cause; there was no evidence to show that the master failed to use reasonable care.

In support of these contentions, see *Atlee* v. *Packet Co.*, 21 Wall. 389; *Alaska Mining Co.* v. *Whelan*, 168 U. S. 86; *Amer. Bridge Co.* v. *Seeds*, 144 Fed. Rep. 605; Black Book of Admiralty (Twiss); Bacon's Abridg. Actions, Local and Transitory; *British African Co.* v. *The Compania*, App. Cas. (1893) 602; 2 Brown's Admiralty (1 Amer. ed.), 94–95; Benedict's Admiralty (4th ed.), 39, 46, 47; *The Blackheath*, 195 U. S. 361; 2 Bailey's Personal Injuries, §§ 2885 and 2993; *Brown* v. *People's Gas Light Co.*, 81 Vermont, 477; *B. & O. R. R. Co.* v. *Baugh*, 149 U. S. 368; *Campbell* v. *Hackfeld*, 125 Fed. Rep. 696; *Cleveland &c. R. R.* v. *Cleveland S. S. Co.*, 208 U. S. 316; 9 Columbia Law Rev. 1; *Cleveland* v. *R. R. Co.*, 73 Fed. Rep. 970; *DeLovio* v. *Boit*, 2 Gall. 399; Gilbert's Practice (3d ed.), 84, 85; 16 Harv. Law Rev. 210; 18 *Id.* 299; 25 *Id.* 381; *Hussey* v. *Coger*, 112 N. Y. 614; *Hogan* v. *Henderson*, 125

N. Y. 774; *Kelly* v. *Norcross,* 121 Massachusetts, 508; *Kelly* v. *New Haven Stmb. Co.,* 74 Connecticut, 343; *Kelly* v. *Jutte Co.,* 104 Fed. Rep. 955; *Leathers* v. *Blessing,* 106 U. S. 626; *The Morris Max,* 137 U. S. 1; *Mostyn* v. *Fabrigas,* 1 Smith L. Cases (11th ed.), 591; Malloy de Jure, Bk. II, Ch. III, § XVI; *Martin* v. *West,* 222 U. S. 191; *Martin* v. *Railroad Co.,* 166 U, S. 399; *McKenna* v. *Fiske,* 1 How. 240; *McDonnell* v. *Oceanic Nav. Co.,* 143 Fed. Rep. 480; *The Noranmore,* 113 Fed. Rep. 367; *The Osceola,* 189 U. S. 158; *Phila. &c. R. R.* v. *Phila. &c. Co.,* 23 How. 209; *The Plymouth,* 3 Wall. 20; *The Pickands,* 42 Fed. Rep. 239; *The Picqua,* 97 Fed. Rep. 649; *Queen* v. *Judge,* 1 Q. B. (1892) 273; *The Queen,* 40 Fed. Rep. 694; *Regina* v. *Keyn,* 2 Ex. D. 63; *Railroad Co.* v. *Baugh,* 149 U. S. 368, 386; *Skinner's Case,* 6 State Trials, 712; *Stevens* v. *Sandwich,* 1 Pet. Ad. Dec. 233; *The Strabo,* 90 Fed. Rep. 110; *Tilly* v. *Rockingham,* 74 N. H. 316; *Westinghouse* v. *Callaghan,* 155 Fed. Rep. 397.

*Mr. W. H. Price, Jr.,* and *Mr. John E. Semmes, Jr.,* with whom *Mr. John E. Semmes, Mr. Jesse N. Bowen* and *Mr. Matthew Gault* were on the brief, for respondent:

Admiralty has jurisdiction in the cases at bar, for the following reasons:

The admiralty courts having properly assumed jurisdiction when the libel was brought against both the ship and the stevedore company, should retain jurisdiction to determine the liability of the stevedore company, even though the libel be subsequently dismissed as to the ship.

Jurisdiction once assumed by the Federal court because jurisdictional amount is alleged in good faith to be involved, is not lost because it subsequently develops by the evidence that less than the jurisdictional amount is actually involved.

Where the requisite diversity of citizenship exists at the commencement of a suit, no subsequent change in the

situation of the parties ousts the jurisdiction of the Federal court.

Where Federal and non-Federal questions are involved in the same suit, and jurisdiction has properly attached for the purpose of determining the Federal question, it is proper for the Federal court to decide the local question only and omit to decide the Federal question. *Campbell* v. *Hackfeld,* 125 Fed. Rep. 696, can be distinguished.

The sole test of admiralty jurisdiction over torts is the locality of the person or thing injured at the time of the impact with the intentional or negligent force.

There is a distinction between admiralty jurisdiction of the United States and that of England.

Locality is the sole test.

The constitutional extent of admiralty jurisdiction is involved in this case.

The tort in this case was essentially maritime in its nature.

On the evidence the master failed in his duty to provide a safe place.

The gang boss was a vice-principal, as was also the foreman.

The evidence was sufficient as to the proximate cause of the accident and as to lack of safety of place of work.

In support of these contentions, see *Barry* v. *Edmonds,* 116 U. S. 550; *The Blackheath,* 95 U. S. 361; *Balt. & Ohio Ry. Co.* v. *Baugh,* 149 U. S. 368; *Clark* v. *Mathewson,* 12 Pet. 164; *Chappell* v. *United States,* 160 U. S. 499; *Campbell* v. *Hackfeld,* 125 Fed. Rep. 696; *Cleveland R. R. Co.* v. *Cleveland S. S. Co.,* 208 U. S. 316; *The Coningsby,* 202 Fed. Rep. 814; *Chicago Junction Ry. Co.* v. *King,* 222 U. S. 222; *C.; R. I. & P. Ry. Co.* v. *Brown,* 229 U. S. 317; *The Conqueror,* 166 U. S. 110; *The Carib Prince,* 170 U. S. 655; *The Clan Graham,* 153 Fed. Rep. 977; *DeLovio* v. *Boit,* 2 Gallison, 398; *Ex parte Easton,* 95 U. S. 72; *The Genesee Chief,* 12 How. 443; *The Gilbert Knapp,* 37 Fed. Rep. 209;

*The George T. Kemp,* Fed. Cas. No. 5341; *Gaynor* v. *Klander-Weldon Co.,* 174 Fed. Rep. 477; *Grand Trunk R. R.* v. *Ives,* 144 U. S. 408; *Insurance Co.* v. *Dunham,* 11 Wall. 1; *The Iriquois,* 194 U. S. 240; *The Lottawanna,* 21 Wall. 558; *Leathers* v. *Blessing,* 105 U. S. 626; *Morgan's Heirs* v. *Morgan,* 2 Wheat. 290; *Mollan* v. *Torrance,* 9 Wheat. 537; *Moorewood* v. *Enequist,* 23 How. 493; *Martin* v. *West,* 222 U. S. 191; *Miller's Case,* Fed. Cas. No. 300; *Manchester* v. *Massa,* 139 U. S. 240; *The Mattie May,* 47 Fed. Rep. 69; *Mullan* v. *P. & S. Mail S. S. Co.,* 78 Pa. St. 25; *N. J. Steam Nav. Co.* v. *Merchants Bank,* 6 How. 344; *Omaha Horse R. R. Co.* v. *Cable Tramway,* 32 Fed. Rep. 727; *O'Brien* v. *Buffalo Furnace Co.,* 183 N. Y. 317; *The Plymouth,* 3 Wall. 36; *Peters* v. *George,* 154 Fed. Rep. 634; *Railroad Co.* v. *Mississippi,* 102 U. S. 135; *Smith* v. *Greenhow,* 109 U. S. 669; *Schunk* v. *Moline M. & S. Co.,* 147 U. S. 500; *Smithers* v. *Smith,* 204 U. S. 632; *Siler* v. *L. & N. R. R. Co.,* 213 U. S. 175; *Simmons* v. *S. S. Jefferson,* 215 U. S. 130; *The Segurranca,* 58 Fed. Rep. 908; *The Senator,* 21 Fed. Rep. 191; *Tennessee* v. *Davis,* 100 U. S. 257; *Thomas* v. *Lane,* 2 Sumner, 1; *The Troy,* 208 U. S. 321; *Tex. & Pac. R. R. Co.* v. *Howell,* 224 U. S. 577; *United States* v. *Bailsford,* 5 Wheat. 184; *United States* v. *Wiltberger,* 5 Wheat. 76; *United States* v. *Grush,* 5 Mason, 290; *United States* v. *Wilson,* 28 Fed. Cases, No. 718; *United States* v. *Bevans,* 3 Wheat. 336; *United States* v. *Rodgers,* 150 U. S. 255; *Warring* v. *Clark,* 5 How. 441, 464; *Williamson* v. *United States,* 207 U. S. 425.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a libel to recover for personal injuries sustained by the libelant as a stevedore in the employ of the Atlantic Transport Company (the petitioner) which was engaged in loading the Pretoria, belonging to the Hamburg-American Steam Packet Company, while lying in the port

of Baltimore. The libel was brought against both the owner of the ship and the stevedore company. It was dismissed as to the former, but a recovery against the latter was allowed by the District Court (190 Fed. Rep. 229) and sustained by the Circuit Court of Appeals (193 Fed. Rep. 1019). This writ of certiorari was granted.

The libelant was one of a gang engaged in loading and stowing copper. He was working on the ship, under one of the hatches. The covers of the hatch were, in three sections, the division being made by two movable iron beams placed athwart the ship. The coverings of the middle section had been removed and placed on top of the fore and after sections. On the dock, the copper was piled upon a rope mat which was lifted by a winch, swung over the hatch, and lowered into the hold. On one of its return trips the mat caught under the after crossbeam which was instantly jerked out of its support and, with the lengthwise timbers resting on it and the hatch covers, fell into the hold severely injuring the libelant. The District Court (referring to the petitioner, the Atlantic Transport Company, as the stevedore) said, p. 231: "There would have been no accident had the entire hatch been uncovered. To uncover a hatch takes time and labor. If bad weather comes, it must be covered. Unnecessary uncovering is to be avoided. It is easy to make a partially covered hatch absolutely safe. The crossbeams of the hatch have holes in their ends. There are corresponding holes in the hatch combings. Pins can be put through these holes. It takes about five minutes to put them in. When in place, an accident such as gave rise to this case cannot happen. The ship's carpenter of the Pretoria keeps the pins when not in use. Accidents often happen because an opened hatch has been left unguarded, or because the hatch coverings fall into the hold. When they do, there is usually a dispute as to whether the ship or the stevedore is to blame. In the case at bar the ship and the stevedore were repre-

sented by the same proctors and by the same advocates. The stevedore acquits the ship . . . The stevedore proved that, when the ship came into port, it took complete charge of the hatches. It uncovered so much of them as it saw fit. If the pins were in and it wanted them out, it took them out. It laid them on the deck. The ship's carpenter gathered them up. If the pins were out and it wanted them in, it told the ship's carpenter. He put them in." For its failure to use due diligence in seeing that the libelant had a safe place in which to work the District Court held the Transport Company liable.

The principal question is whether the District Court had jurisdiction; that is, whether the cause was one 'of admiralty and maritime jurisdiction.' Const. Art. III, § 2; Rev. Stat., § 563; Judicial Code, § 24; Act of Sept. 24, 1789, c. XX, § 9, 1 Stat. 73, 76. As the injury occurred on board a ship while it was lying in navigable waters, there is no doubt that the requirement as to locality was fully met. The petitioner insists, however, that locality is not the sole test, and that it must appear that the tort was otherwise of a maritime nature. And this was the view taken by the Circuit Court of Appeals for the Ninth Circuit, in affirming a decree dismissing a libel for want of jurisdiction in a similar case. *Campbell* v. *Hackfeld & Co.*, 125 Fed. Rep. 696.

At an early period the court of admiralty in England exercised jurisdiction 'over torts, injuries, and offences, in ports within the ebb and flow of the tide, on the British seas and on the high seas.' *De Lovio* v. *Boit*, 2 Gall. 398, 406, 464, 474. While its authority was denied when the injurious action took place *infra corpus comitatus*, it was not disputed that jurisdiction existed when the wrong was done 'upon the sea, or any part thereof which is not within any county.' (4 Inst. 134.) The jurisdiction in admiralty of the courts of the United States is not controlled by the restrictive statutes and judicial prohibitions

of England (*Waring* v. *Clarke*, 5 How. 441, 457, 458; *Insurance Company* v. *Dunham*, 11 Wall. 1, 24; *The Lottawanna*, 21 Wall. 558, 576); and the limitation with respect to torts committed within the body of any county is not applicable here. *Waring* v. *Clarke, supra; The Magnolia*, 20 How. 296. "In regard to torts"—said Mr. Justice Story in *Thomas* v. *Lane*, 2 Sumn. 1, 9—"I have always understood, that the jurisdiction of the Admiralty is exclusively dependent upon the locality of the act. The Admiralty has not, and never (I believe) deliberately claimed to have any jurisdiction over torts, except such as are maritime torts, that is, such as are committed on the high seas, or on waters within the ebb and flow of the tide." This rule—that locality furnishes the test—has been frequently reiterated, with the substitution (under the doctrine of *The Genesee Chief*, 12 How. 443), of navigable waters for tide waters. Thus, in the case of *The Philadelphia, Wilmington & Baltimore R. R. Co.* v. *The Philadelphia & Havre de Grace Steam Towboat Co.*, 23 How. 209, 215, the court said: "The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts, it depends entirely on locality." Again, in the case of *The Plymouth*, 3 Wall. 20, where jurisdiction was denied upon the ground that the substance and consummation of the wrong took place on land and not on navigable water, the court said, p. 35: "The jurisdiction of the admiralty over maritime torts does not depend upon the wrong having been committed on board the vessel, but upon its having been committed upon the high seas or other navigable waters.—A trespass on board of a vessel, or by the vessel itself, above tide-water, when that was the limit of jurisdiction, was not of admiralty cognizance. The reason was, that it was not committed within the locality that gave the jurisdiction. The vessel itself was unimportant. . . . The jurisdiction of the admiralty does not depend upon the

fact that the injury was inflicted by the vessel, but upon the locality—the high seas, or navigable waters where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." See *Manro* v. *Almeida*, 10 Wheat. 473; *Waring* v. *Clarke, supra*, p. 459; *The Lexington*, 6 How. 344, 394; *The Commerce*, 1 Black, 574, 579; *The Rock Island Bridge*, 6 Wall. 213, 215; *The Belfast*, 7 Wall. 624, 637; *Ex parte Easton*, 95 U. S. 68, 72; *Leathers* v. *Blessing*, 105 U. S. 626, 630; *Panama Railroad* v. *Napier Shipping Co.*, 166 U. S. 280, 285; *The Blackheath*, 195 U. S. 361, 365, 367; *Cleveland Terminal & Valley R. R. Co.* v. *Cleveland Steamship Co.*, 208 U. S. 316, 319; *Martin* v. *West*, 222 U. S. 191; *The Neil Cochran*, Fed. Cas. No. 10,087; *The Ottawa*, Fed. Cas. No. 10,616; *Holmes* v. *O. & C. Rwy. Co.*, 5 Fed. Rep. 75, 77; *The Arkansas*, 17 Fed. Rep. 383, 384; *The F. & P. M.* No. 2, 33 Fed. Rep. 511, 513; *The H. S. Pickands*, 42 Fed. Rep. 239, 240; *Hermann* v. *Port Blakely Mill Co.*, 69 Fed. Rep. 646, 647; *The Strabo*, 90 Fed. Rep. 110; 2 Story on the Constitution, § 1666. It is also apparent that Congress in providing for the punishment of crimes committed upon navigable waters has regarded the locality of the offense as the basis for the exercise of its authority. Act of April 30, 1790, c. IX, § 8, 1 Stat. 112, 113; act of March 3, 1825, c. LXV, 4 Stat. 115; Rev. Stat., §§ 5339, 5345, 5346; Criminal Code, § 272, 35 Stat. 1088, 1142; *United States* v. *Bevans*, 3 Wheat. 336, 387; *United States* v. *Wiltberger*, 5 Wheat. 76; *United States* v. *Rodgers*, 150 U. S. 249, 260, 261, 285; *Wynne* v. *United States*, 217 U. S. 234, 240.

But the petitioners urge that the general statements which we have cited, with respect to the exclusiveness of the test of locality in cases of tort, are not controlling; and that in every adjudicated case in this country in which the jurisdiction of admiralty with respect to torts has been sustained, the tort apart from the mere place of its occur-

rence has been of a maritime character. It is asked whether admiralty would entertain a suit for libel or slander circulated on board a ship by one passenger against another. See Benedict, Admiralty, 4th ed., § 231. The appropriate basis, it is said, of all admiralty jurisdiction, whether in contract or in tort, is the maritime nature of the transaction or event; it is suggested that the wider authority exercised in very early times in England may be due to its antedating the recognition by the common-law courts of transitory causes of action and thus arose by virtue of necessity.

We do not find it necessary to enter upon this broad inquiry. As this court has observed, the precise scope of admiralty jurisdiction is not a matter of 'obvious principle or of very accurate history,' *The Blackheath, supra.* And we are not now concerned with the extreme cases which are hypothetically presented. Even if it be assumed that the requirement as to locality in tort cases, while indispensable, is not necessarily exclusive, still in the present case the wrong which was the subject of the suit was, we think, of a maritime nature and hence the District Court, from any point of view, had jurisdiction. The petitioner contends that a maritime tort is one arising out of an injury to a ship caused by the negligence of a ship or a person or out of an injury to a person by the negligence of a ship; that there must either be an injury to a ship or an injury by the negligence of the ship, including therein the negligence of her owners or mariners; and that, as there was no negligence of the ship in the present case, the tort was not maritime. This view we deem to be altogether too narrow.

The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and stowing a ship's cargo is of this character. Upon its proper performance depend in large measure the

safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class 'as clearly identified with maritime affairs as are the mariners.' See *The George T. Kemp*, 2 Lowell, 477, 482; *The Circassian*, 1 Ben. 209; *The Windermere*, 2 Fed. Rep. 722; *The Canada*, 7 Fed. Rep. 119; *The Hattie M. Bain*, 20 Fed. Rep. 389; *The Gilbert Knapp*, 37 Fed. Rep. 209; *The Main*, 51 Fed. Rep. 954; *Norwegian Steamship Co.* v. *Washington*, 57 Fed. Rep. 224; *The Seguranca*, 58 Fed. Rep. 908; *The Allerton*, 93 Fed. Rep. 219; Hughes, Adm. 113; Benedict, Adm., 4th ed., § 207. The libelant was injured because the care required by the law was not taken to protect him while he was doing this work. We take it to be clear that the District Court sitting in admiralty was entitled to declare the applicable law in such a case, as it was within the power of Congress to modify that law. *Waring* v. *Clarke, supra; The Lottawanna, supra.* The fact that the ship was not found to be liable for the neglect is not controlling. If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation and to commerce on navigable waters, was quite sufficient. Even with respect to contracts where subject-matter is the exclusive test, it has been said that the true criterion is "whether it was a maritime contract, having reference to maritime service or maritime transactions." *Insurance Company* v. *Dunham*, 11 Wall. 1, 26. The Constitution provides that the judicial power shall extend 'to all cases of admiralty and maritime jurisdiction,' and the act of Congress defines the jurisdiction of the District Court, with respect to civil causes, in terms of like scope. To hold that a case of a tort committed on board a ship

in navigable waters, by one who has undertaken a maritime service, against one engaged in the performance of that service, is not embraced within the constitutional grant and the jurisdictional act, would be to establish a limitation wholly without warrant.

The remaining question relates to the finding of negligence. It is urged that the neglect was that of a fellow-servant and hence that the petitioner was not liable. Both courts below, however, concurred in the finding, that the petitioner omitted to use proper diligence to provide a safe place of work. *Baltimore & Ohio R. R. Co.* v. *Baugh*, 149 U. S. 368, 386. As the question belongs to a class which under the distribution of judicial power is determinable by the Circuit Court of Appeals in last resort, we shall not undertake to discuss it at length or to restate the evidence. *Chicago Junction Rwy. Co.* v. *King*, 222 U. S. 222, 224; *Chicago, R. I. & Pac. Rwy. Co.* v. *Brown*, 229 U. S. 317, 320; *Grand Trunk Rwy. Co.* v. *Lindsay*, 233 U. S. 42, 50. It is sufficient to say that we are satisfied from an examination of the record that the ruling was justified.

*Affirmed.*