On Rehearing.
O’NIELL, J.
Defendant appeals from a judgment awarding plaintiff $15,000 damages for personal injuries, subject to a credit of $240 paid before the suit was filed. In answer to the appeal, plaintiff prays that the amount of the judgment be increased to $20,-000.
1-Ie fell from a scaffold and was seriously injured while working in the employ of the defendant company as a carpenter on the dredgeboat Dixie, belonging to the board of commissioners of the port of New Orleans, and undergoing repairs in defendant’s dry dock in the Mississippi river at New Orleans.
After the accident, the defendant through an indemnity company (by whom defendant was insured against employers’ liability for such accidents) made weekly payments of compensation at $10 a week for 24 weeks, as *831 suming that plaintiff was entitled to compensation under the Employers’ Liability Act, the Act No. 20 of 1014 (page 44).
When plaintiff was well enough to get about, he called upon the president of the dry dock company, and asked what effect his receiving the payments of compensation would have upon his legal right in the premises; and, having, called in the agent of the indemnity company, and in presence of the latter, the president of the dry dock company assured plaintiff that he was entitled to compensation at $10 a week during his disability to work, and that his acceptance of the payments would not be construed as a waiver or abandonment of any claim that he might have against the dry dock company. The president of the dry dock company and the agent of the indemnity company wore then of the opinion that the case was governed by the Employers’ Liability Act, and not by the general law of torts; and it appears that the only question in their mind was whether plaintiff was entitled to compensation for permanent total disability or only for temporary total disability. There was no doubt or dispute that plaintiff had suffered total disability. The president of the defendant company and the agent of the indemnity company, therefore, conceded that if plaintiff’s disability was permanent, he was entitled -to the $10 a week for 400 weeks; if only temporary, he was entitled to the $10 a week during the period of disability, not, however, beyond 300 weeks.
Thereafter, having indorsed and cashed 19 or 20 of the voucher checks of $10 each, plaintiff consulted an attorney, who at first was also of the opinion that the case was governed by the Employers’ Liability Act, which, if applicable, would exclude any and all other rights or remedies. The attorney therefore wrote to the agent of the indemnity company, requesting an acknowledgment of liability for $4,000, for permanent total disability. The agent replied that the company would continue the payments of $10 a week until medical advice would warrant a discontinuance of the payments, or until the obligation would be canceled by the statute. Plaintiff’s attorney replied that he was not satisfied with the attitude assumed by the indemnity company; that, if the company would admit liability for permanent total disability, he “supposed” that he would “have to accede thereto,” but that, unless the company would acknowledge liability for permanent total disability, he, the attorney for plaintiff, would submit the matter to the court for determination. In the meantime, on his attorney’s advice, plaintiff refused to cash the remaining four or five checks received from the indemnity company.
Thereafter, on the opinion expressed by the Supreme Court of the United States, in the case of the Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, plaintiff’s attorney concluded that the case was not governed by the Employers’ Liability Act; and he brought the suit under article 2315 of the Civil Code, the general law of damages arising ex delicto. In the alternative, he pleaded that, if the court should hold that the Employers’ Liability Act governed the case and excluded all other rights and remedies, then, and in that event only, plaintiff should be awarded compensation in the sum of $4,000.
The defendant pleaded: (1) That the petition did not set forth a cause or right of action; and (2) that the court was without jurisdiction ratione materise. These pleas being overruled, defendant answered, admitting liability under the Employers’ Liability Act for $10 a week for 400 weeks, unless plaintiff’s disability should come to an end sooner. In support of the contention that defendant’s liability was limited to the compensation allowed by the Employers’ Liability Act, defendant alleged, in the answer to the suit, that the dredgeboat Dixie was not afloat at *833 the time of the accident, hut was then in a dry dock, a fixed structure, contrived for the purpose of taking ships out of the water for repairs, having no means of propulsion, not designed for navigation and permanently moored, “and that neither was the said dry dock nor said vessel while it was contained therein, nor the plaintiff while working upon said vessel, within the maritime jurisdiction of the United States, but was within the jurisdiction of the state of Louisiana.” Averring that the plaintiff had received and cashed the checks paid for compensation under the Employers’ Liability Act, defendant pleaded that plaintiff was estopped and debarred from denying that the case was governed by the statute, and pleaded that plaintiff could not maintain an action for tort without having returned the amount which he had received for compensation under the Employers’ Liability Act. In the alternative, and in the event the'court should hold that the plaintiff was not bound by the Employers’ Liability Act, and that the statute did not govern the case, defendant pleaded and averred that plaintiff’s injuries were caused by his own fault and that of his fellow servants, and without any fault or negligence on the part of defendant. The prayer of defendant’s answer was that plaintiff’s suit be dismissed at his cost, and that plaintiff be ordered to continue to take, as he had theretofore taken, and as defendant had always shown a willingness to pay, the sum of $10 a week for 400 weeks, unless plaintiff’s disability should conle to an end sooner.
Opinion.
Defendant’s answer limits the issue to the question whether plaintiff’s remedy is, under article 2315 of the Civil Code, the general law of damages arising ex delicto, or is restricted to a demand for compensation under the Employers’ Liability Act. The same issue was raised by the plea or exception of no cause or right of action; for, if the Employers’ Liability Act governs the case,- section 34 of the statute excludes all other rights and remedies, viz:
“That the rights and remedies herein granted to an employé on account of a personal injury for whieh he is entitled to compensation under this act shall be exclusive of all other rights and remedies of such employé, his personal representatives, dependents, relations, or otherwise, on account of such injury.”
[1, 2] The plea to the jurisdiction of the state court, ratione materias, is without merit, and the answer1 to the suit was, in effect, an abandonment- of the plea, because if, as defendant contends, the location of the dredge-boat Dixie was not within the admiralty jurisdiction at the time of the accident, plaintiff’s only remedy was to proceed in the state court, and in such case his right and remedy would be controlled by the state statute, the Employers’ Liability Act.' On the other hand, if. the Dixie was, notwithstanding she was in a dry dock, within the admiralty jurisdiction at the time of the accident, plaintiff is entitled to the common-law remedy in the state court.
It is not contended by the defendant that the dredgeboat Dixie was not a ship or vessel within the meaning of the admiralty law, or was not subject to admiralty or maritime jurisdiction, by reason of the purpose for which she was constructed or used, or the business in which she was engaged. The only fact or reason stated by defendant for contending that the Dixie was not within the admiralty or maritime jurisdiction at the time of the accident is that the boat was then out of the water, in a floating dry dock. The answer to that contention is that, although the floating dry dock itself was not subject to admiralty and maritime jurisdiction (Cope v. Valette Dry Dock Co., 119 U. S. 625, 7 Sup. Ct. 336, 30 L. Ed. 501), it is well settled that a ship or vessel while undergoing repairs in a dry dock is subject to the admiralty. a,n.d maritime jurisdiction. The United States Su *835 preme Court has so decided, twice, with regard to a vessel locked in a dry dock consisting of an artificial basin from which all the water had been pumped out. See Perry v. Haines (The Robert W. Parsons) 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73; and Simmons v. Steamship Jefferson, 215 U. S. 130, 30 Sup. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907. In the latter case it was held that a court of admiralty had jurisdiction of a libel for salvage for services rendered by tugboats in extinguishing a fire communicated from the shore to a vessel undergoing repairs in a dry dock; and, in the former case cited, the ruling was that the admiralty jurisdiction of the federal courts extended to the enforcement by proceedings in rem of a lien for repairs made upon a vessel in a dry dock. A contract for repairs to a vessel in a dry dock being a maritime contract, so also must the work of ,the employé engaged in making the repairs be maritime in its nature. On this subject, see, also, Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157, and Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900.
[3-5] Clause 3, § 24, and section 256, of the Judicial Code (36 Stat. 1091, c. 231 [U. S. Comp. St. §§ 991 (3), 1233]), conferring upon the courts of the United States jurisdiction in all civil causes of admiralty and maritime jurisdiction, reserves to suitors in all cases the right of a common-law remedy where the common law is competent to give it.
The United States Supreme Court decided, however, in the case of the Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, that the clauses in the Judicial Code, “saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it,” did not save or reserve to suitors, in such cases, the rights and remedies afforded by an Employers’ Liability Act, or Workmen’s Compensation Law, of any state.
The case of the Southern Pacific Co. v. Jensen was decided on the 21st of May, 1917. By an act approved October 6, 1917 (40 Stat. 395, c. 97, §§ 1, 2, Comp.. St. 1918, Comp. St. Ann. Supp. 1919, §§ 991 (3), 1233, Fed. Stat. Anno. Supp. 1918, pp. 401, 414), Congress directed that both clauses of the Judicial Code be amended by adding to the expression “saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it” the words “and to claimants the rights and remedies under the workmen’s compensation law of any state.”
The amendment, however, is not pertinent to this case, because the cause of action arose, and in fact the suit was filed, before the act of October 6, 1917, was adopted. It was decided by the Supreme Court of the United States, in Peters v. Veasey, 251 U. S. 121, 40 Sup. Ct. 65, 64 L. Ed. —, on December 8, 1919, that the amendment was not applicable to a cause of action that had arisen when tho amendment was adopted. Therefore, whether Congress, by amending the clauses of the Judicial Code so as to save to suitors in.all cases the right of a common-law remedy where the common law is competent to give it, “and to claimants the rights and remedies under the Workmen’s Compensation Law of any state,” intended to give to the Legislature of each and every state the power to deprive suitors in such cases of the right of a common-law remedy, by enacting in a workmen’s compensation law a clause excluding all other rights and remedies, is a question which we need not decide in this case.
The work in which plaintiff was engaged at the time he was injured was maritime in its nature; his employment was a maritime contract, and his claim for damages was enforceable in the admiralty and maritime jurisdiction. For that reason, before the passage of the act of Congress of October 6, *837 1917, the Employers’ Liability Act was not pertinent, and did not deprive the plaintiff of the right of a common-law remedy. We say “common-law remedy” because article 2315 of the Civil Code of this state is only an embodiment of the common-law right of action for tort, viz.:
“Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it.”
The reason given, in Southern Pacific Co. v. Jensen, for holding, before the amendment of October 6, 1917, that the saving clauses in the Judicial Code did not save to suitors the rights and remedies afforded by the workmen’s compensation law of any state is not pertinent to the system of civil law prevailing in this state, where the rights that prevail at common law are codified and the remedies are substantially the same.
[6, 7] There is no merit in defendant’s contention that plaintiff was estopped by his conduct in accepting and retaining the payments of compensation for the several weeks of total disability. The defendant, or rather the indemnity company, paid only what was then conceded to be due to plaintiff, and what is yet conceded to have been due him at that time, regardless of what might yet be due. The defendant or the indemnity company was in no worse position, and is yet in no worse position, for'having made the payments, even though the defendant and the indemnity company believed then that each payment was all that was due at the time. A debtor cannot discharge his debt by paying a part which he concedes to be due, unless the creditor agrees to accept the part in satisfaction of the whole debt. Plaintiff’s claiming all that he believes is due him now is not inconsistent with his having received the part which defendant conceded was then due. There is therefore no element of estoppel in this case. Nor can the plea be sustained as one of compromise or settlement. A transaction of compromise must be mutually accepted by the parties, for the purpose of preventing or putting an end to a lawsuit, in preference to the hope of either party of gaining and the risk of losing. To be effective, such agreement must be reduced to writing. R. C. C. art. 3071. And the Employers’ Liability Act (section 17) requires the decree of a competent court, on the joint petition of the employer and employé, verified by both parties, to settle or compromise a claim for compensation. There was no settlement, nor agreement of settlement, between the plaintiff and defendant in this case, because, while the indemnity company was making payment of what defendant conceded was due at the time, there was a dispute as to the total sum that would have to be paid in the future; which dispute was not settled when this suit was filed. Defendant relies upon the decision in Summers v. Woodward, Wight & Co., 142 La. 241, 76 South. 674, in support of the argument that the plaintiff is estopped and bound to abide by the Employers’ Liability Act. But the ruling in the case ci.ted is not pertinent to this case. The ruling was that the employer had, by making payments of compensation under the Employers’ Liability Act, and by accepting reimbursement or indemnity from the insurance company, admitted liability under the statute. The question presented in that case was whether the defendant owed compensation under the Employers’ Liability Act or owed nothing. The question presented now is whether the defendant owes compensation under the Employers’ Liability Act or owes full indemnity under the general law of damages arising ex delicto. In the ease cited, the admission made by paying indemnity under the Employers’ Liability Act was an admission against the payor’s interest. In the case before jis, the admission is invoked as evidence in favor of the defendant who made the admission. In the case cited, the fact that the defendant had made payments of compen *839 sation under the Employers’ Liability Act was not held to be an estoppel, technically speaking, but was held to be an admission that the business in which the defendant was engaged at the time of the accident was a hazardous business or occupation, within the pufview of the Employers’ Liability Act; for that question of fact was the only question at issue in the case.
[8, 9] Defendant’s counsel has contended, in oral argument and in the briefs filed, that the plaintiff cannot recover damages under the law of the state because the measure of damages is controlled by the admiralty and maritime law. The answer to the argument is that there was nothing in plaintiff’s pleadings that interfered with the defendant’s invoking any provision of the admiralty and maritime law limiting the measure of indemnity or damages. No such limitation has been invoked; and we know of none that conflicts “with the measure of damages under the state law in such cases. If the plaintiff in this case had been a seaman or member of the Dixie’s crew, and if he were therefore suing the owners of the vessel for damages or indemnity for the injury he suffered, the liability would be limited to the seaman’s wages, at least to the end of the voyage, and the cost of maintenance and cure of the injured seaman, unless the injury had resulted from Unseaworthiness of the vessel, or a failure to supply and keep in order her proper appliances. In the case of a seaman, we would be constrained to hold, under the admiralty and maritime law, that all members of the crew of the vessel, except perhaps the master, are fello.w servants, and that a seaman could not recover for injuries sustained through the negligence of another member of the crew, beyond the expense of maintenance and cure of the injured seaman. But the plaintiff in this case, was not a seaman or member of the boat’s crew, and is not suing the owners of the vessel; and we know of no special rule of admiralty or maritime law that takes his case out of the general rule that, in admiralty, the award of damages rests largely in the sound discretion of the court, under all the circumstances of the case. See the Steamer Max Morris v. Curry, 137 U. S. 1-15, 11 Sup. Ct. 29, 34 L. Ed. 589, and the decisions there cited. The same doctrine prevails in the law of this state, in the provisions of article 1934 of the Civil Code, that, in the assessment of damages for an offense or quasi offense, although the damages are not appreciable in money, compensation or indemnity may be allowed for an amount largely within the discretion of the judge or jury.
Though it must be conceded that the provisions of the Judicial Code, saving to suitors, in cases like this, the right of a common-law remedy, did not increase or diminish the liability fixed by the admiralty and maritime law, we know of no strict measure of liability for a. case like this, in the admiralty law; and the result would be the same, therefore, whether the liability of the defendant be measured by the admiralty or state law.
[10] There is no dispute about any of the important facts of the case. Plaintiff was standing upon a temporary scaffold at the bow of the boat, fitting a strip of lumber under the edge of the deck. The foreman of the work, standing on the dry dock, a few feet away from the scaffold, ordered a crew of men to pull a bilge block from under the bow of the boat, close by the foot or stanchion of the scaffold. The bilge block consisted of three pieces of timber fastened together, forming a solid block of wood measuring 12" X 40" X 4S", weighing more than a thousand pounds and requiring six men to handle it. The scaffold collapsed immediately when the bilge block was moved. There is no doubt that the moving of the bilge block caused the scaffold to collapse, either by bumping against one of the stanchions or by otherwise disarranging the structure below. The plaintiff was then turning round or reaching for a piece of material on the boat’s deck, and had *841 no warning of the intention of tlie foreman to have the hilge block moved. The evidence leaves no doubt that the accident was caused by the negligent manner of moving the bilge block, under orders of the foreman employed by the defendant company. No negligence whatever is imputed to the plaintiff.
[11] It is not seriously contended by appellant that the quantum of damages allowed is out of proportion to the injury suffered. The injury has caused permanent paralysis of the left side of plaintiff’s body, has rendered him impotent, and has permanently disabled him for work of any kind. He is 46 years old and has a wife and seven children, with no means of support except the wages of a little girl earning $5 a week. We are not disposed, however, to increase the allowance .of damages, where the amount is already unusually large.
The judgment appealed from is affirmed.
Inasmuch as the only question decided or considered on the original hearing of this case was the plea of estoppel, the right is reserved to appellant to make application for a rehearing.
PROVOSTY, J., dissents and hands down reasons. See 84 South. 115.