CORNELIUS MARTIS, Appellant, *v.* UNION TRANSPORT COMPANY, INC., Respondent.

Second Department, November 2, 1923.

Ships and shipping — action by stevedore, who was employed by another stevedore, to recover for injuries suffered while stowing goods between decks in vessel lying in navigable waters — stevedore is not seaman within meaning of Merchant Marine Act of 1920, § 33, which abrogates fellow-servant doctrine — Labor Law, § 200 et seq., not applicable.

A stevedore employed by another stevedore who is injured while stowing goods between decks in a vessel lying in navigable waters is not a seaman within the meaning of that term as used in section 33 of the Merchant Marine Act of 1920 which abrogates the fellow-servant rule as to seamen.

A stevedore under such circumstances does not come within the provisions of section 200 *et seq.* of the Labor Law of 1909, relating to the fellow-servant doctrine.

APPEAL by the plaintiff, Cornelius Martis, from a judgment of the Supreme Court in favor of the defendant, entered in the office

of the clerk of the county of Kings on the 1st day of June, 1922, upon the dismissal of the complaint by direction of the court at the close of the case.

The plaintiff was a stevedore in the employ of the defendant and he sues to recover damages for personal injuries sustained by reason of the alleged negligence of the defendant.

On August 24, 1920, the defendant was engaged in loading the steamer *F. J. Luckenbach*, which was lying at pier 33, South Brooklyn.· The ship was afloat in the navigable and tidal waters of the United States. The plaintiff was working in the hold of the vessel and he was stationed there to receive, unhook, handle and stow away certain drafts of steel plates. The manner of stowing away the plates was as follows: The draft was lowered by a block and fall operated by a steam winch. There was also what is known as a burton, also operated by a steam winch, which moved the draft sideways, the block and fall moving it vertically only. The steel plates were stowed flat and level, with the edges against each other and without any appreciable space between them. This would ordinarily make a level flooring on the plates as they were severally piled up. It appears that they were being stowed between decks, the hatch to the lower hold being covered. The ordinary method was to lower them to· this hatch covering, and the holdmen then took turns to unhook the draft and guide and direct it so that it would swing in the proper place between decks. After the draft was landed and in the place where it was to remain, the workmen started to unhook it. Nothing further was done until a signal was given to the signalman, who, in turn, notified the winchman to operate the winch. On the day in question this method of loading was pursued up to a certain time. The gangwayman,, or signalman, stood at the top of the hatch on the deck and directed the movements of the winchman. The winchman could not see into the hold; the gangwayman could, but he could not see the men after they had arrived between decks. If the draft was to be shifted after it had been first lowered, the gangwayman would signal accordingly to the winchman. The plaintiff says that as two of the holdmen went to unhook and stow a draft, they called to the gangwayman to hoist it up a little; and when the gangwayman went ahead on it, it jumped two or three feet in the air. The men managed to jump clear of the draft in safety. They complained to Mr. Bowman, who is said to be the foreman, and he told them to go ahead, that it would be all right. They returned to the hold and continued loading for a while, and another draft acted in the same way. The plaintiff and the other men again went ashore and said they were going to quit. Bowman, it is claimed, then told them to go

ahead with the loading without using the winches after the drafts reached the hatch cover in the hold. According to the plaintiff and one witness, they were directed to continue the work and let the plates stay where they dropped, and not to stow them. The plaintiff says that then they proceeded to unhook the drafts at the precise place where they were lowered, and that because of this method the plates were strewn all around and the floor became uneven, with spaces here and there between the plates. He contends that while the work was being done in this manner, Bowman took the gangwayman's place, giving orders as to the various steps of the loading operation. After he had continued this for about fifteen drafts, one of the drafts was lowered. It was the plaintiff's turn to unhook it. The plaintiff stepped forward with a man named Claxton to unhook the draft where it had fallen. They say they expected to unhook it with the draft lying where it was. Bowman, however, gave an order to " go ahead on the burton," and the draft was pulled right against the derrick and broke the plaintiff's leg. The plaintiff says that immediately on hearing the order to go ahead on the burton, he started to run to get out of the way and that his left foot caught in a hole [space] between the plates, and that the draft moved in response to Bowman's order and swung against his right leg, causing the injury. He claims that no warning had been given by Bowman of his intention to go ahead on the burton, and that no one in the hold had signaled that the draft should be moved.

*Robert Moers,* for the appellant.

*Peter S. Carter* [*Robert Phillips* with him on the brief], for the respondent.

KELBY, J.:

The complaint was drawn so that it might be brought within the purview of the old Employers' Liability Act, which was formerly section 200 *et seq.* of the Labor Law of 1909 (as amd. by Laws of 1910, chap. 352; now Employers' Liability Law of 1921, § 2 *et seq.*) The complaint alleges the giving of a notice under that act, and it pleads the negligence of the defendant, its agents and servants, and one of the persons engaged in the service of the defendant, and intrusted with authority " to direct, control or command " the plaintiff; the latter words being the words of the statute.

On this appeal the plaintiff invokes the provisions of the Employers' Liability Act as a ground for reversing the trial judge's ruling that the negligent act, if any there was, was the act of a fellow-servant.

The appellant's first point is that the Federal statute (Merchant

Marine Act of 1920 [41 U. S. Stat. at Large, 1007], § 33), known as the Jones Act, which expressly abrogates the fellow-servant rule, is applicable to this case. Section 33 of the Merchant Marine Act of 1920, effective June 5, 1920, which amended section 20 of the Seamen's Act of 1915 (38 U. S. Stat. at Large 1185, chap. 153), effective March 4, 1915, and known as the La Follette Act, provides as follows: " That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143), with regard to railway employees, referred to in the quotation, gives a cause of action " for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

Section 4612 of the United States Revised Statutes, which is a part of title 53, entitled " Merchant Seamen," provides as follows: " In the construction of this Title, every person having the command of any vessel belonging to any citizen of the United States shall be deemed to be the ' master ' thereof; and every person (apprentices excepted) who shall be employed or engaged to serve in any capacity on board the same shall be deemed and taken to be a ' seaman.' " In particulars here immaterial this section has been amended. (See Seamen's Act of 1898 [30 U. S. Stat. at Large, 762], § 23; Seamen's Act of 1915 [38 id. 1168], § 10.) Sections 3 and 4612 of the United States Revised Statutes also define the word or term " vessel " when used in the Federal statutes.

The plaintiff claims, under this last section of the law, that a longshoreman is a seaman within the purview of the Merchant Marine Act of 1920. Notwithstanding the cases cited, which on first reading would tend to support this construction of the law, I think the plaintiff is in error. In the case of *Cassil* v. *United States Emergency Fleet Corp.* (289 Fed. Rep. 774) it was expressly held that a stevedore is not a seaman under the Merchant Marine Act of 1920. This case was decided by the Circuit Court of Appeals for the Ninth Circuit in May, 1923. There the action was directly against the owner of the ship, the plaintiff being an employee of the Portland Stevedoring Company, which was engaged in loading it. The libel in that case alleged that while the plaintiff was assisting in the effort to land a sling load of lumber on a truck on said ship, the winchman, operating the winches of the ship, carelessly and negligently raised the sling load by a sudden, violent jerk whereby the

appellant's hand was caught between the loading sling and the hatch coaming. Negligence was charged against both the ship and the stevedoring company. The trial court dismissed the libel, holding that no cause of action was alleged against the Fleet Corporation, there being no allegation of the unseaworthiness of the vessel, and that there was no cause of action against the stevedoring company, for the reason that the winchman, through whose alleged negligence the accident occurred, was a fellow-servant of the appellant, for whose negligence the stevedoring company was not liable; and the decree of the lower court was affirmed on both points. Evidently the plaintiff there, as in this case, claimed to be relieved from the fellow-servant rule by reason of the section of the Merchant Marine Act of 1920 above quoted. The court on that point said:

" But it was not the intention of the statute to include as seamen longshoremen or stevedores. The heading of the title under which section 4612* is found is ' Merchant Seamen.' The provisions under that title all relate to vessels belonging to citizens of the United States and the employment, wages, protection, discharge, and rights of merchant seamen. The statute was not intended to and does not enlarge the definition of ' seaman ' as it was then understood and accepted in admiralty law. Generally speaking, a seaman is any one who, by contractual engagement with the owner, master, or charterer of a vessel, serves the vessel in navigation. He is not necessarily a sailor. He may be a cook, fireman, or even a bartender. A stevedore renders no service in actual navigation. It is true that he renders service incidental to navigation in loading and unloading vessels, a service which is maritime in its nature, but he is a landsman and he does not belong on the vessel, nor does he go with the vessel. It has never been held that stevedores are included in the definition contained in the section so quoted. In *The Ole Oleson*, [U. S. Dist. Ct.] 20 Fed. 384, it was held that longshoremen were but landsmen, and were not entitled to recover upon a libel for seamen's wages. *Saylor* v. *Taylor*, 77 Fed. 476, 23 C. C. A. 343, cited by the appellant, is not in point. It goes no farther than to hold that engineers and employees of a dredge engaged in deepening navigable waters and capable of being towed from place to place are seamen.

" There can be no doubt that for his injuries which were received while on board the vessel the appellant may bring a libel against his employer in the admiralty for damages as for a maritime tort. *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 34 Sup. Ct. 733,

---

* See U. S. R. S. tit. 53; Id. § 4612.— [REP.

58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. Yet in such an action, in an admiralty court, the doctrine of fellow servant still obtains. But the appellant claims the benefit of the provisions of the Oregon Compensation Law (Laws 1913, p. 188),* among which is the abolition of the doctrine of fellow servant, and he contends that an admiralty court is bound to take notice of that law. The State, however, has no authority to provide rules for the enforcement of rights in admiralty. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205."

This case is, therefore, authority for the proposition that the so-called Jones Act, above quoted, does not include a longshoreman as a common seaman.

In *Saylor* v. *Taylor* (*supra*), a steam dredge without motive power, upon which the men were working, was held to be a vessel within the meaning of sections 3 and 4612 of the Revised Statutes of the United States and, therefore, within admiralty jurisdiction. There, plaintiffs were employed directly on the vessel and paid by the owners; and being employed on the vessel itself directly, they were entitled to a lien for their services and came within the definition of seamen. This appears to me as obviously different from the case at bar. Each employee was essentially a part of the crew of the steam dredge. He stayed with it, did his work on it, and contributed, according to his capacity, to the success of the enterprise in which the dredge was engaged. It has been a long-recognized principle, said to come from the Laws of Oleron, that the ship stands responsible for the wages of the seamen. In the case at bar the plaintiff was not employed by the vessel or the owner of the vessel, but by the general stevedore. So, too, in the case of *Ellis* v. *United States* (206 U. S. 246), relied upon by the appellant. The persons there held to be " sailors " within the meaning of the act were employees of a dredge and received their pay directly from the owners of the dredge, and did their work thereon entirely. An information was filed against the owners of the dredge for an alleged violation of the statute limiting to eight hours per day the hours of " laborers and mechanics " employed by the United States government or any contractor or sub-contractor upon any of the " public works " of the United States. (See 27 U. S. Stat. at Large, 340, chap. 352, being Federal Eight-hour Law of 1892.) It was alleged that the Eastern Dredging Company, in that case, employed certain men, alleged to be " laborers or mechanics," more than eight hours a day upon what was alleged to be one of the " public works " of the United States, namely, the dredging of a portion of the thirty-five

---

* See Oregon Workmen's Compensation Law, being Oregon Gen. Laws of 1913, p. 188, chap. 112; Id. p. 194, chap. 112, § 15, as amd. by Oregon Gen. Laws of 1917, p. 546, chap. 288, § 6; Olson's Oregon Laws of 1920, § 6620.— [REP.

foot channel, so called, in Boston harbor.   Mr. Justice HOLMES, in the course of his opinion, says: " The statute says, ' laborers and mechanics   *   *   *   employed   *   *   *   upon any of the public works.'   It does not say, and no one supposes it to mean, ' any public work.'   The words ' upon ' and ' any of the,' and the plural ' works ' import that the objects of labor referred to have some kind of permanent existence and structural unity, and are severally capable of being regarded as complete wholes.   The fact that the persons mentioned as employed upon them are laborers and mechanics, words admitted not to include seamen, points in the direction of structures and away from the sea.   The very great difficulty, if not impossibility, of dredging in the ocean, if such a law is to govern it, is a reason for giving the defendants the benefit of a doubt; and the fact that until last year the government worked dredging crews more than eight hours is a practical construction not without its weight.   *   *   *   The words laborers and mechanics are admitted not to apply to seamen as that name commonly is used.   Therefore it was contended but faintly that the masters of the tugs could not be employed more than eight hours. But the argument does not stop with masters of tugs, or even with mates, engineers and firemen of the same.   *Wilson* v. *The Ohio*, Gilpin, 505; *Holt* v. *Cummings*, 102 Pa. St. 212.   The scows and floating dredges were vessels.   Rev. Stat. §§ 3, 4612.   They were within the admiralty jurisdiction of the United States.   *The Robert W. Parsons*, 191 U. S. 17.   (A number of cases as to dredges in the Circuit and District Courts are referred to in *Brown Hydraulic Dredging Co.* v. *Federal Contracting Co.*, 148 Fed. Rep. 290.)   Therefore all of the hands mentioned in the informations were seamen within the definition in an earlier statute of the United States. Rev. Stat. § 4612; *Saylor* v. *Taylor*, 77 Fed. Rep. 476; S. C., 23 C. C. A. 343.   See also Act of March 3, 1875, c. 156, § 3†;   *   *   *. They all require something of the training and are liable to be called upon for more or less of the services required of ordinary seamen. The reasons which exclude the latter from the statute apply, although perhaps in a less degree, to them.   Whatever the nature of their work it is incident to their employment on the dredges and scows as in the case of an engineer or coal shoveller on board ship. Without further elaboration of details we are of opinion that the persons employed by the two defendant companies were not laborers or mechanics and were not employed upon any of the public works of the United States within the meaning of the act."

It will be seen, therefore, that these were employees of the dredges. which were " vessels " within the meaning of the statute, and they

---

† See 18 U. S. Stat. at Large, 485, chap. 156, § 3.— [REP.

were directly employed by the " vessels " themselves.   And again the decision seems to turn upon the fact that they were not engaged upon " public works " of the United States and that they were not " mechanics " within the meaning of the statute.   I think that case is not controlling here.   As heretofore pointed out, the plaintiff in the case at bar was employed by the stevedore, and not by the vessel.   Therefore, the claim of the plaintiff, that he is within the terms of the Merchant Marine Act of 1920 cannot be allowed.

The appellant's second point is that even if the Federal Merchant Marine Act of 1920 were not available in this action, the maritime law would apply the rule of the State Employers' Liability Act (Labor Law of 1909, § 200 *et seq.*, as amd. *supra*) concerning the fellow-servant defense.   This precise point was before this court in the case of *Tomachio* v. *Carter & Weekes Stevedoring Co.* (204 App. Div. 834).   There the complaint of the plaintiff was dismissed upon the ground that the negligence complained of was that of a fellow-servant, for which the master was not liable.   In that case the plaintiff had offered in evidence a notice under the Employers' Liability Act, and this was excluded.   This court held that there was no error and that the Employers' Liability Act did not apply in an action in which the plaintiff was working in the hold of a ship when injured.   On appeal to the Court of Appeals the judgment of this court was affirmed (235 N. Y. 586), and in the latter court the plaintiff again urged that the Employers' Liability Act applied, as appears by the briefs on file with the original case on appeal.

I recommend that the judgment dismissing the complaint be affirmed, with costs.

Present — KELLY, P. J., RICH, MANNING, KELBY and YOUNG, JJ.

Judgment dismissing complaint unanimously affirmed, with costs.