## MEYERS v. PITTSBURGH S. S. CO.
### No. 10511.

Circuit Court of Appeals, Sixth Circuit.
Feb. 5, 1948.

Eugene Bleiweiss, of Cleveland, Ohio (Harry F. Payer and Payer, Bleiweiss, Crow & Mollison, all of Cleveland, Ohio, and Otto K. Mischka, of Elyria, Ohio, on the brief), for appellant.

McAllister Marshall and W. Alexander Eldridge, both of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, on the brief; McAlister Marshall and W. Alexander Eldridge, both of Cleveland, Ohio, of counsel), for appellee.

Before HICKS, SIMONS and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The problem presented by this appeal is whether, under the circumstances involved, the owner of a ship in dry-dock for reconditioning and repair is under any obligation to an employee of a dry-dock company to avoid the creation of a hazardous condition on the dry-dock by reason of water discharged from the ship onto the dry-dock in freezing weather. The action was one at law begun by the appellant in the Court of Common Pleas of Cuyahoga County, Ohio, whence it was removed to the District Court upon the ground of diversity of citizenship. From an instructed verdict for the defendant at the close of all the evidence, the plaintiff brought this appeal.

In December of 1943, the appellee's Steamer, "William G. Clyde," entered dry-dock No. 2 of the American Ship Building Company at Loraine, Ohio, for repairs and preparation for its winter lay-up. The arrangement between the dry-dock company

and the ship owner was that the crew of the Clyde was to remain aboard the vessel and to use their ship's quarters while the work was in progress. Water was to be furnished by the dry-dock company to be used aboard the ship for the operation of its power plant and the needs of the crew, excepting only the ship's toilet facilities. Excess water was to be permitted to drain onto the dry-dock which was equipped with drainage ditches to carry it off. On December 15, 1943, the appellant was injured by slipping on ice which had accummulated on the floor of the dry-dock. The crew was not permitted to enter the working areas of the dry-dock, and while there is substantial proof of a custom upon the Great Lakes for a "live ship" when in dry-dock to attach hoses to the scuppers to carry overflow water to the drains of the dock, the existence of this custom is sharply challenged. At the time of the accident, the appellant had been working for the American Ship Building Company for six months, but on the day before had been assigned to work on the propeller of the Clyde. On his second day, he worked inside the vessel, but shortly after lunch was ordered to procure a tool which necessitated leaving the vessel and descending to the floor of the dock. When he reached the floor another employee was already bringing the tool for which he had been sent. The appellant then decided to warm himself at a salamander which stood upon the dock floor, as he was permitted to do. Leaving the salamander for a stick of wood to replenish the fire, he slipped upon a patch of ice covered with snow and sustained severe injuries. The water which formed the ice had been flowing from a drain opening below the laundry room on the side of the ship and the weather was freezing. It is not disputed that the Dry-dock Company was under obligation to prevent the hazard so as to furnish its employees with a safe place to work, and for his injury the appellant received compensation benefits from his employers. Notwithstanding, he brought the present suit against the owners of the ship, as he was permitted to do by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

■ While the suit was at law, it appears to be settled that a right peculiar to the law of admiralty may be enforced either by a suit in admiralty or by one on the law side of the court. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927; Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. As was said in Chelentis v. Luckenbach Steamship Co., Inc., 247 U.S. 372, 38 S.Ct. 501, 504, 62 L.Ed. 1171: "The distinction between rights and remedies is fundamental. * * * a right sanctioned by the maritime · law may be enforced through any appropriate remedy recognized at common law."

■ The principal basis for the decision below was that the proofs revealed no more than that the cause of the injury was the accumulation of ice upon property which was under the sole control and dominion of the appellant's employer and upon which the ship's employees were not permitted to go, in consequence of which the owners of the Clyde owed the appellant no duty to prevent the creation of the hazard, that duty being the sole obligation of his employers. The Supreme Court, however, in the Sieracki case, supra, developed a broader concept applicable to maritime torts. The obligation which a ship owner owes to its seamen it is not free to nullify by parceling out its operations to intermediary employers, and that liability attaches, even though the owner is without fault. It arises not merely from contract but from the fact of service to the ship with the owner's consent. Therefore, injury to a stevedore comes within the classification of a marine tort. Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208; 51 L.R.A., N.S., 1157. Though for most purposes a stevedore is not a seaman, his work is a maritime service of the kind formerly rendered by the ship's crew. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157. The court reasoned that if his injuries are incurred while working on board a ship in navigable waters, the stevedore is entitled to a seaman's traditional and statutory pro-

tection, regardless of the fact that he is employed immediately by another than the owner. Were we to apply the reasoning of the Sieracki case, it would perhaps be not too difficult to conclude that a dry-dock company employee engaged in the repair of a ship on navigable waters, with the consent of the ship's owner, is like the stevedore entitled to all the rights that the maritime law accords a seaman, and historical maritime practice might well disclose that such work was traditionally performed in large measure by seamen.

We face the fact, however, that the Sieracki case dealt with injuries resulting from lack of seaworthiness of the vessel upon which stevedores were employed, while here no question of the vessel's seaworthiness arises. We bow, of course, to controlling authority, yet sense no obligation to extend a doctrine, however logical such extension may seem, which distinguished dissenting Justices have characterized as novel, creating new rights in maritime workers hitherto unrecognized by maritime law or statute and without warrant in history or precedent, nor with support in policy or practical needs, and so consider the obligation of the ship in the present case not as absolute, but as one based upon fault, if in consideration of the record substantial evidence appears pointing to fault.

■ The traditional and established test of negligence is, of course, the conduct of a reasonably prudent man in like circumstances, and it has long been settled that a finding of negligence is warranted even from an act not amounting to wanton wrong where injury in some form ought to have been foreseen in the light of attendant circumstances. Milwaukee etc. Railway Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256; Northern Railway Co. v. Page, 274 U. S. 65, 47 S.Ct. 491, 71 L.Ed. 929; Palsgrof v. L. I. Railroad Co., 248 N.Y. 339, 162 N. E. 99, 59 A.L.R. 1253 (Cardozo, C. J.). This has been consistently the holding of this court. Winters v. Baltimore & Ohio Railroad Co., 6 Cir., 177 F. 44; Orton v. Pennsylvania Railroad Co., 6 Cir., 7 F.2d 36; Bobango v. Erie Railroad Co.,

6 Cir., 57 F.2d 667; Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193. It is also settled that immunity from liability for injuries resulting to innocent third persons flowing from negligence may not be purchased by agreements with independent contractors. 35 Am.Jur. 160; Parsan v. New York Breweries Co., 208 N.Y. 337, 101 N.E. 879; Horn v. Hamburg American Packet Co., 81 N.J.L. 729, 80 A. 490; Lookout Mountain Iron Co. v. Lea, 144 Ala. 169, 39 So. 1017. This appears to be the conclusion reached in the Restatement of the Law of Torts, Sec. 416, at page 1128, and is the law of Ohio. Hozian v. Crucible Steel Casting Co., 132 Ohio St. 453, 9 N.E. 2d 143, 112 A.L.R. 333; Manchester v. Youngstown Sheet & Tube Co., Ohio.App., 46 N.E.2d 780. One may not escape liability for his torts by committing them upon another's property.

■ Applying these principles, a question of fact emerges from the record in this case which, upon applicable instructions, should have been submitted to the jury. It may be that upon consideration of the configuration of the dry-dock floor and the agreement, express or implied from custom that the dry-dock company would safely dispose of overflow, the jury might have found that no reasonable expectation of injury could have been entertained by the employees of the ship, but that was its province and not that of the court. There was conflicting evidence of conventional practice on the Great Lakes as to responsibility for overflow from a live ship when in drydock, and while it is true that under Ohio law customary methods do not furnish a conclusive test by which negligence is to be assayed, Ault v. Hall, 119 Ohio St. 422, 164 N.E. 518, 60 A.L.R. 128, conformity thereto is a circumstance to be weighed and considered with other circumstances in determining hazard and so whether there was reasonable expectation of injury. The existence of a custom and its nature were, however, in the light of conflicting evidence, facts to be determined by the jury.

Judgment reversed and cause remanded for trial in conformity with the views here expressed.