LOUIS C. NEWMAN, Plaintiff, *v.* ROBINS DRY DOCK AND REPAIR COMPANY, Defendant.

(Supreme Court, Kings Special Term, December, 1921.)

Workmen's compensation — ships and shipping — moving steel plate in shipyard not maritime — Workmen's Compensation Law exclusive — judgment on the pleadings — Rules of Civil Practice, 106(2), 107, 108.

> While a contract of employment may be maritime in character a tort arising from the employer's violation of duty in connection with the contract, is not necessarily a maritime tort.
>
> Where the work done upon materials to be used in repairing a ship is wholly performed on land without regard to the nearness of the ship and not requiring the physical presence of the workman at any time on the ship, said work is not such performance of a maritime contract as to oust the State Industrial Commission of its jurisdiction under the Workmen's Compensation Law to make an award to an employee who is injured while doing such work.
>
> Plaintiff employed by defendant as a boiler maker and mechanic was directed by his foreman to leave his usual work and bring into the shop a heavy steel plate which was destined ultimately for use in repairing an ocean going vessel which was undergoing repairs in defendant's dry dock. While so engaged, the hoisting and other apparatus which was built on beams embedded in the ground, loosened, broke or snapped. An action against the employer, which was engaged in the business of ship building and repairing, for injuries caused by the falling of the plate upon plaintiff, was based upon the alleged negligence of the defendant in failing to furnish a safe place to work and safe appliances. *Held,* that the services plaintiff was performing when injured were not of a maritime

nature within the ruling denying jurisdiction of the State
Industrial Commission under the Workmen's Compensation Law.

The jurisdiction of the Industrial Commission in such a case
is exclusive, and where defendant's motion for judgment on
the pleadings under rule 106(2) of the Rules of Civil Practice,
on the ground that the court had not jurisdiction of the subject
of the action, is supported by an affidavit pursuant to rule 108
from which and the complaint it is made clear and undisputed
that the injuries to plaintiff occurred on land in the manner
and under the conditions alleged, and the plaintiff does not
avail himself of the right given by said rule 108 to present
affidavits in denial of the defendant's claims, the motion will
be granted.

MOTION for judgment on the pleadings under rule
107 of the Rules of Civil Practice and for a dismissal
of the complaint.

Harry Wandmaker, for plaintiff.

James A. Gray, for defendant.

KAPPER, J. Is work done upon materials to be used
in repairing a ship where such work can be and is
wholly performed on land without regard to the pro-
pinquity of the ship and not requiring the physical
presence of the workman at any time on the ship
itself, such performance of a maritime contract as to
oust the state industrial commission of its jurisdic-
tion under the Workmen's Compensation Law to
award compensation thereunder to an employee
injured while doing such work, is the question now
presented for determination. It arises upon a motion
by defendant for judgment on the pleadings under
subdivision 2 of rule 107 of the Rules of Civil Prac-
tice, " That the court has not jurisdiction of the sub-
ject of the action," and is supported by affidavit
pursuant to rule 108 from which and the complaint
it is made clear and undisputed that the plaintiff's
injury occurred *on land* in manner and under con-

428 NEWMAN *v.* ROBINS DRY DOCK & REPAIR Co.

ditions, as follows: The defendant corporation is engaged in the business of shipbuilding and repairing and for that purpose maintains yards, docks and dry docks. At the time of the injuries to the plaintiff the steamship *Attilla,* an ocean-going vessel, was undergoing repairs in defendant's dry dock. Plaintiff was employed by defendant as a boiler maker and mechanic and was known as " a puncher and shearer " on steel plates used in repair work on vessels lying at the docks and in the dry docks. On July 28, 1920, plaintiff was directed by his foreman to leave his usual work and bring in to the shop a heavy steel plate, which was destined for *ultimate use* in repairing the *Attilla.* While so engaged the hoisting and other apparatus which was built upon beams embedded in the ground " loosened, broke or snapped," causing the plate to fall upon plaintiff and thereby inflicting the injuries of which he complains. The action is based upon the alleged negligence of defendant in failing to furnish a safe place to work and safe appliances. Affidavits submitted by defendant show that immediately prior to the accident the steel plate was suspended in the air over a tramcar on a railway which ran to various points in defendant's yards and which was located entirely upon land; that when the plate became detached from the hoist and fell upon plaintiff, he was standing upon the ground at least 100 feet distant from any navigable water; and that the work performed by plaintiff under his employment was all done in and about defendant's shop, " always on land and never on water." These facts must, on this motion, be taken as true inasmuch as the plaintiff stands upon the complaint and the defendant's affidavits and has not availed himself of the right given him by rule 108, *supra,* to present affidavits in denial of defendant's claims. The defendant contends that

plaintiff's sole remedy is afforded by the Workmen's Compensation Law with the provisions of which it has complied. The plaintiff claims that the jurisdiction of the state industrial commission under the Workmen's Compensation Law uniformly has been denied whenever it has appeared that the person injured was at the time engaged in the performance of a maritime contract irrespective of the place of performance and without regard to the fact of whether such work was required to be carried out on the ship or on the shore. I do not read the cases upon which the plaintiff relies as implying so broad a ruling. The cases which he cites are: *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205; *Knickerbocker Ice Co.* v. *Stewart*, 253 id. 149; *Matter of Doey* v. *Howland Co.*, 224 N. Y. 30; *Matter of Anderson* v. *Johnson Lighterage Co.*, Id. 539; *Matter of Keator* v. *Rock, etc., Co.*, Id. 540; *Matter of Newham* v. *Chile, etc., Co.*, 232 id. 37; *Matter of Sullivan* v. *Hudson Navigation Co.*, 182 App. Div. 152, and *Kennedy* v. *Cunard S. S. Co., Ltd.*, 197 id. 459. When the Supreme Court of the United States and the Court of Appeals decided the *Jensen, Stewart* and *Doey Cases, supra,* those courts did not, as I understand it, formulate a rule applicable generally in tort actions to what may be characterized as the performance of maritime contracts irrespective of the place of performance. They were deciding the cases upon the facts of the particular case, and so deciding they were laying down a rule in the *Jensen* and *Stewart* cases governing the work of loading and unloading cargoes and in the *Doey* case the work of making changes on the ship to prepare her for cargo carrying. Were it permissible to subject these so-called maritime tort actions to the *locality test* obtaining in admiralty, namely, that the jurisdiction of admiralty in tort cases is exclusively

dependent upon the cause of action having arisen on waters subject to admiralty jurisdiction, we should have a workable and unmistakable rule. The question becomes complicated when cases are presented that are not cognizable in admiralty and yet are not subject to the jurisdiction of the state industrial commission because the contract under which the work was being performed is said to be of maritime nature. See *Keator* v. *Rock Plaster Mfg. Co.*, 256 Fed. Repr. 574. While a contract may be maritime in character a tort arising from the employer's violation of a duty in connection therewith is not necessarily a maritime tort. Thus, a material man furnishing supplies or repairs may be regarded as having a contract for maritime service and may proceed against the ship *in rem* or against the owner *in personam* (*North Pacific S. S. Co.* v. *Hall & Co.*, 249 U. S. 119), but assuming that the fabrication of such repair materials at a point miles removed from the ship or navigable waters subjected a workman to injury, could it be said that the tort was occasioned in the performance of a maritime contract within the rule denying jurisdiction of the state industrial commission? In none of the cases cited by the plaintiff, nor in any that my research has disclosed, has the state industrial commission been ousted of jurisdiction upon such a state of facts as is presented by this record. In considering the question as to the nature of plaintiff's employment in the present case, a brief reference to the cases cited by him should be helpful. In the *Jensen* case, plaintiff was on the ship aiding in the work of unloading cargo. In *Matter of Newham*, the claimant was performing services in the operation of loading. In *Matter of Anderson*, claimant was engaged in stevedoring work on the pier in the process of loading. In *Matter of Keator*, claimant was on a dock as foreman engaged in the work of

unloading. In the *Stewart* case, claimant, who was a bargeman, was on a dock engaged in dismantling a derrick or rigging necessarily used in loading and unloading. In *Matter of Doey,* claimant was on the vessel making a repair when injured. In *Matter of Sullivan,* the accident was upon the boat. In the *Kennedy* case, plaintiff was a longshoreman " working in loading cargo on board the ship." It will be observed that in all these cases the injured party was engaged in the service of *loading or unloading* a vessel's cargo or having a direct connection with such work as longshoremen habitually have, or else he was on the ship itself in the work of making repairs. In the group of cases decided in *Matter of Sullivan* v. *Hudson Navigation Co.,* 182 App. Div. 152, all will be found to have been within one of the two distinct classes, namely, injury while loading or unloading cargo, or injury occurring while at work on the boat itself. These cases may be summarized as follows: *Matter of Anderson* v. *Chadwick & Co.,* the accident occurred on the ship; *Matter of Tacoletti,* the injured employee was engaged in longshore work; *Matter of Bernard Anderson,* the employee was master of a barge and met his death while operating it; and in *Matter of Belknap* the employee was chief engineer on a steamship and was injured while putting its engine in order. As for the cases affecting longshoremen and stevedores whose work involved the actual loading and unloading of a ship, the reasons underlying their disposition are clear. These reasons were stated in *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 61, 62, as follows: " The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. We entertain no doubt that the service in loading and storing a ship's cargo is of this character. Upon its proper per-

formance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutely necessary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class ' as clearly identified with maritime affairs as are the mariners.' " The cases involving the actual physical presence on the ship of the servant while engaged in making repairs present no difficulty of decision that the service was maritime in character within the rule denying jurisdiction to the state industrial commission. It becomes necessary, therefore, to decide whether or not the plaintiff at bar may invoke admiralty or common law jurisdiction and render ineffectual the Workmen's Compensation Law in his and like cases. While the reported cases do not enunciate a definite, fixed rule to determine what labor is and what labor is not of a maritime character, I think there is discernable in them the distinguishable feature that the services performed were in immediate proximity to or upon the ship and had a direct and immediate connection with the ship itself as an instrument of navigation. The emphasis is not on the fact of proximity but on the necessity of the element of proximity to permit of performance. Such is the case of the act of loading or unloading cargo as well as the case of physical presence on or actual personal contact with the ship in the making of repairs. The relation arising out of the work of stevedores and longshoremen in handling and loading and unloading cargo could hardly .be made to apply to the drayman or truckman who carts goods destined for shipment to the dock or wharf. On the other hand, a case might readily be imagined of ship re-

pairs by a gang of men part of them working on the boat and part on the dock, all of whom, however, were in the act of physically attaching an essential portion of the repair material to the ship itself. An illustration of the distinction has already been pointed out in the case of the lien of a materialman or supplyman, the work of handling whose material at a point remote from the ship, whether supplies or furnishings, would, if the rule urged by plaintiff were to be adopted, constitute a maritime tort in case the supplies and furnishings were intended for a ship, whereas if intended for a hotel obviously would not be of a maritime character. In the present case, plaintiff's services were performed in shops and yards situated on dry land. That these were located only a short distance from the vessel or from navigable water is immaterial. The controlling considerations are that plaintiff's services had no immediate *physical* connection with the vessel itself and *proximity thereto was not essential to their performance.* His services could have been performed as efficiently wherever the shops and yards were located, as well in Pittsburgh as in Brooklyn. Neither is the fact that the steel plate was destined for ultimate use in the repairs being made on the *Attilla* of legal significance. The services of thousands of employees throughout the land, in many and diversified fields of human endeavor, culminate day by day in finished products which through active intervening agencies in time become a part of some vessel engaged in ocean traffic. None of the cases cited suggests that the final destination for use on a vessel of the finished product of labor clothes such labor *with maritime characteristics.* Such a principle would effect a drastic change in the law and procedure which is the result of years of development and which now governs the respective rights and obligations of employer and

28

employee in many fields of industrial activity; the purposes sought to be accomplished by the Workmen's Compensation Law in large measure would be defeated; the jurisdiction of admiralty would be extended to a degree not·even suggested in the course of the historic struggle between admiralty and the common law, and the powers of the courts of common law curtailed accordingly. In my opinion there is no such rule. Plaintiff in this case was engaged in the ordinary labor of moving a steel plate in a yard. The services he was performing when injured were not of a maritime nature within the rulings denying jurisdiction of the state industrial commission under the Workmen's Compensation Law which, in my opinon, is exclusive in this case. The motion should be granted.

Motion granted.