**ERIE R. CO. v. IRONS.**

No. 4378.

Circuit Court of Appeals, Third Circuit.

March 19, 1931.

Collins & Corbin, of Jersey City, N. J.
(Edward A. Markley and Charles W. Broad-

hurst, both of Jersey City, N. J., of counsel), for appellant.

Charles Hershenstein, of Jersey City, N. J. (Thomas G. Haight, of Jersey City, N. J., of counsel), for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge.

On the occasion in question, a Bush Terminal freight car float was moored to a float bridge of the Erie Railroad Company in the navigable waters of the Hudson River at Jersey City. A switching crew, consisting of a conductor, two brakemen, an engineer and fireman, was engaged in shunting loaded freight cars onto the float. One draft had been placed on its southerly track. The engine with three empty pushers and the remaining draft of five loaded cars then proceeded to move eastwardly over the bridge and onto the northerly track of the float. The movement was being made under the direction of the conductor with the aid of two brakemen, Irons being nominally the forward brakeman and Smith the rear brakeman, though in the direction of the movement their positions were physically reversed. When the draft came to rest on the float, Smith mounted the most easterly car and, either at once or later, put on its brakes and the brakes of other cars. Irons set the brake of the westerly car, descended to the deck, and, either at the command or with the assent of the conductor, uncoupled that car from a pusher, thus cutting out the draft, and signalled the engineer to go ahead. This the engineer did by moving the engine only a few feet yet far enough to carry the last pusher off the float and onto the bridge, leaving a space of twelve or fifteen feet between it and the first car.

The float had a hump in the middle from which the deck inclined fore and aft. All at once the draft of cars began slowly to move toward the bridge. Irons picked up a block and in his unsuccessful effort to chock a wheel had one of his feet caught by the block and the other by a frog or a rail, causing him to fall under the car where he sustained an injury resulting in the loss of a leg. He brought suit under the Federal Employers' Liability Act (45 USCA §§ 51–59) for this personal injury and, after verdict, had the judgment from which the defendant railroad company now appeals, assigning several errors involving additional facts which we can state more appropriately in the separate discussion of each assignment.

The first error the defendant charges to the court was its refusal to direct a verdict in its favor on three grounds: (a) That there was no evidence of negligence on its part; (b) that as matter of law the plaintiff assumed the risks of his injury; and (c) as matter of law the accident was solely due to the contributory negligence of the plaintiff.

On the question of negligence of the defendant two issues were raised and submitted and certainly one, and maybe both, were decided. The first was whether or not the brakes on the cars were defective or "inefficient" in violation of the Safety Appliance Act (45 USCA § 1 et seq.); the other whether Smith, the rear brakeman and Irons' fellow-workman, was negligent in performing his work of promptly and efficiently setting the brakes when the draft came to rest. If a finding on both of these issues could not be sustained by the evidence, then, clearly, a verdict should have been directed for the defendant. But the two issues were submitted in the alternative and if either could be found for the plaintiff on supporting evidence that would be enough under proper instructions.

There was evidence that had the brakes been efficient, the one brake set by Irons and the two (or more) set by Smith before the cars began to move would have held the draft, raising the permissible inference that the brakes were defective. Though expert in quality, this, nevertheless, was evidence for the jury to accept or reject. The defendant, however, maintains that there was absolutely no evidence that Smith had set even one brake completely and securely before the cars began to move and, accordingly, that the jury, in finding the brakes defective, was allowed to base their inference not on a proven fact but on another inference. Manning v. John Hancock M. I. Co., 100 U. S. 693, 25 L. Ed. 761. Opposed to the defendant's position we find positive testimony (R 132) that Smith applied the brakes on the two rear cars when the draft was stationary. There is testimony that he applied the brakes on the other cars but it is uncertain whether, when he did so, the cars were stationary or moving; and there is also testimony that all the brakes set by him were securely set in that by a later test they could be moved only one notch more. We think this is valid evidence on the issue of defective brakes and sustains the

jury's possible finding on this one of the two issues.

■ And as to Smith's negligence there is evidence that sustains the jury's possible finding for the plaintiff on that issue, for it is certain from the character of the verdict that on either one or the other of these issues the jury found for the plaintiff. In respect to this second issue the defendant, somewhat contrary to its position on the first, maintains there was no evidence to dispute Smith's word that he so completely and securely set the brakes that when, after the accident, he went over the cars, as ordered, he was only able to take up each brake one notch more by using his entire strength with a brake stick. But the negligence charged to him as a fellow-workman was not in failing adequately to set the brakes but in failing seasonably to set them. It was his duty to jump on the cars as they came upon the float, climb to the top and apply the brakes at the east end and work west as soon as the cars stopped. Irons immediately applied the brake by hand on the westerly end of the first car and then, as was his duty, climbed down to make the cut. But Smith was late in getting up on the cars and the evidence shows that if he had promptly and properly performed his duty and had jumped upon the cars when they were going onto the float and had begun tightening the brakes as soon as the cars had stopped, he would have had time to tighten all the brakes while Irons was tightening one, descending to the ground and preparing to make the cut. Everyone agrees that if the brakes had been efficient and all had been set the draft could not have moved. We think this evidence was enough on which to submit the issue of Smith's negligence to the jury.

■ The defendant's next ground for a directed verdict was that, as matter of law, the plaintiff assumed the risks of his injury. There is no question that in an action under the Federal Employers' Liability Act the defense of assumption of risk (save in specified cases) continues as at common law. Seaboard Air Line v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Chesapeake, etc., R. Co. v. Proffitt, 241 U. S. 462, 36 S. Ct. 620, 60 L. Ed. 1102; Southern Pacific Co. v. Berkshire, 254 U. S. 415, 41 S. Ct. 162, 65 L. Ed. 335. But the legal responsibility of the employee in assuming risks depends somewhat on whether they are a part of or incident to his employment,

and are, or should be, known by him. The defendant maintains that the risk of the cars moving on the float prior to the brakes being fully and efficiently set by Smith was an obvious risk of Irons' employment which he assumed as a part of his contract of hire. But Smith's action was charged as negligence and the jury found that either his negligence or that of the defendant in supplying inefficient brakes was the proximate cause of Irons' injury. An employee does not, under the Federal Employers' Liability Act, assume as a part of his contract of employment the risk of the negligence of a fellow-employee or of his master in supplying inefficient appliances in violation of the Safety Appliance Act.

■ The final ground on the motion for a directed verdict was that the accident was due solely to the negligence of the plaintiff himself. If that were true, he of course should not recover. Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212; Illinois Central R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528. Having held that there was evidence to submit the alternative issues of negligence on the part of the defendant to the jury, it would be legally inconsistent to say that the learned trial judge should have directed a verdict for the defendant on the ground that the plaintiff was solely negligent. The defendant's main contention on this issue is that Irons should have satisfied himself before making the cut that Smith had properly performed his duties by fully and efficiently applying the brakes. Smith's duty was fixed by rule or practice and was known to Irons, hence we think Irons might have assumed that Smith had performed his duty. However that may be, the conductor was in charge of the movement, both Smith and Irons were within his view and Irons made the cut on the conductor's direction or with his assent.

We find no error in the court's denial of the motion for a directed verdict.

■ The defendant next charges error to the trial court in denying its motion for a new trial based on the ground that the damages were excessive. The appellant recognizes the general rule that a trial court on a motion for a new trial may in the exercise of its discretion deny the motion and that its action is not a subject of review by an appellate court. Henderson v. Moore, 5 Cranch, 11, 3 L. Ed. 22; Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58; Ayers v. Watson, 137 U. S. 584, 11 S. Ct. 201, 34

L. Ed. 803; Pickett v. United States, 216 U. S. 456, 30 S. Ct. 265, 54 L. Ed. 566. It maintains however as an exception to this very firm rule that where the denial of the motion is an abuse of discretion or due to the application of erroneous legal principles, it is a subject for review on appeal.

We discern nothing in the matter raised on the motion for a new trial involving legal principles and capable of an erroneous application and therefore reviewable within the sense of Chesapeake & Ohio Railway Company v. Gainey, 241 U. S. 494, 36 S. Ct. 633, 60 L. Ed. 1124, and of our own case of Stetson v. Stindt (C. C. A.) 279 F. 209. Here the learned judge was dealing only with the amount of the jury's verdict in an action of tort and was called upon to exercise his discretion in determining whether or not on the record before him the verdict was excessive. In performing that duty we find he did not abuse his discretion.

The real trouble in this case arises from the next question which is whether under the facts as set forth in the complaint and proved at the trial the court had jurisdiction of this suit under the Federal Employers' Liability Act, or was the plaintiff's sole remedy under the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1424 [33 USCA §§ 901–950), to be pursued in the method there prescribed which initially is not by suit in a district court. This question was brought to the attention of the court (after the case had been tried, verdict rendered, rule for a new trial dismissed and judgment entered) on a petition to set aside the judgment and, being a jurisdictional question, is urged on this appeal under authority of C., B. & Q. R. R. Co. v. Willard, 220 U. S. 413, 31 S. Ct. 460, 55 L. Ed. 521, and Continental National Bank v. Buford, 191 U. S. 119, 24 S. Ct. 54, 48 L. Ed. 119.

In this case the plaintiff not only pleaded the Federal Employers' Liability Act but counted on that act and specifically averred a violation of the Safety Appliance Act. At the trial the defendant admitted that, at the time of the injury, the cars in question were engaged and the plaintiff was employed in interstate commerce and the case was, with the concurrence of everyone, tried to judgment under the Federal Employers' Liability Act.

As to the evidence the defendant neither at the trial nor later on motion for a new trial made a claim that the plaintiff's injury was maritime in character because sustained when he was engaged in a marine employment, yet, on the motion to set aside the judgment it said, and here urges, that the evidence established that fact and necessarily divested the court of the jurisdiction of the case which it had assumed under the Federal Employers' Liability Act. The matter was earnestly argued before the trial court, and in this court, on opposite theories by opposing counsel. The defendant maintained that, whatever his previous employment and whoever was his employer, Irons was at the moment of his injury loading a vessel in navigable waters and therefore was performing a maritime service, Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Nogueira v. N. Y., N. H. & H. R. R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754, which establishes that Irons' remedy for the resulting injury was exclusively under the Longshoremen's and Harbor Workers' Compensation Act.

The position of the plaintiff was, and is, that he was not a longshoreman employed at the time of his injury in loading a vessel but was a railroad employee and as such was, wholly without regard to place, engaged purely in a railroad service, and that the Congress did not put one so employed within the terms of the act. Like ourselves, the trial judge did not feel called upon to decide this question. He disposed of the motion adversely to the defendant on a finding that, as a right of action is preserved to an injured employee unless his employer has qualified to invoke the statute, the defendant had not shown the things required of it to bring the injury within the act. The antecedents of the Act and the steps by which it was developed may be found in Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157; Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451; Ann. Cas. 1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; State Industrial Commission of State of New York v. Nordenholt Corporation, 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Washington v. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646; Panama Railroad Co. v. Johnson, 264 U. S. 375, 44 S. Ct. 391, 68 L. Ed. 748; Engel v. Davenport, 271 U. S. 33, 46 S. Ct. 410, 70

L. Ed. 813; International Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157; Northern Coal Co. v. Strand, 278 U. S. 142, 49 S. Ct. 88, 73 L. Ed. 232, and Nogueira v. N. Y., N. H. & H. R. R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754. Seeing there its purpose and scope, we shall assume without deciding that shifting loaded freight cars onto the float was in essence loading cargo and was therefore maritime in character. With this assumption before us we turn to the defendant's claimed qualifications to invoke the act and claimed place of the accident on which the learned trial judge, holding them not proved, dismissed the motion to set aside the judgment.

 As to these qualifying essentials, the plaintiff says that the act (section 2, subsec. 3 [33 USCA § 902, subsec. 3]) excludes employees on vessels under eighteen tons net, and that there was no testimony as to the weight of the float and therefore none as to whether he was within the act. Proof that the float was 250 feet over all with a beam of 50 feet, having on its deck three railroad tracks and carrying ten loaded freight cars of a weight of 100,000 pounds each was rather conclusive evidence that the float was more than eighteen tons.

Next the plaintiff maintains there was no testimony as to the ownership of the float. However important that may be, we find none. More important, perhaps, is the plaintiff's third contention, that where the employer fails to insure its compensation liability or to file a statement with the United States Commissioner that it is financially responsible as a self-insurer, the provisions of section 5 (33 USCA § 905) are applicable, namely, that upon the failure of the employer to secure such payment, the injured employee may elect to maintain an action at law or in admiralty. We find no evidence that the defendant had complied with this requirement.

The defendant however urges that all such things may be proved when Irons proceeds against it under the act and therefore need not be proved by the defendant in this case. Manifestly that position is unsound. For this case has been ended by judgment and what the defendant is now trying to do is to oust the court of its jurisdiction over its judgment. This can only be done on an affirmative showing that the employee and the remedy for his injury come under some other act than the one under which his case was brought, tried and decided.

 And, finally, to prevail on its motion to set aside the judgment the defendant must show from the testimony in the record that as a matter of fact (distinguished from the question of law on which we have predicated an assumption) that the injury was maritime because the accident did in fact happen on navigable waters during the performance of a maritime service. Therefore the locus in quo of the accident, being determinative of whether or not the plaintiff's employment was maritime and his injury maritime, has a vital bearing on the question whether the Longshoremen's and Harbor Workers' Compensation Act applied and whether, accordingly, the court was without jurisdiction of the case. On this matter there was testimony to this effect:

After the draft of five cars had been placed on the northerly track of the float and been cut from the engine with its three pushers, two things happened: One, the draft remained stationary for a short time and the engine and pushers pulled away and stopped on the bridge. Thus the cars were on the float in navigable waters and the engine and pushers were on the bridge, which, being neither a boat nor a float, was for present purposes land. The easterly end of the easterly pusher on the land was about twelve feet from the westerly end of the westerly car on the float. The accident happened somewhere within this short span. Where? This is a jurisdictional question which, manifestly, must be answered. In looking for the answer we find testimony which further contracts the space within which it did happen and lessens the probability of its occurrence on the float. It is this:

When the draft was brought to a stop on the float, the westerly end of the westerly car was about six feet from the westerly end of the float. Thus the probability of a marine accident is restricted to these six feet. After Irons had cut the draft and the engineer had on his signal moved the last pusher to its new position six feet on the bridge and stopped, the draft on the float started to move toward the bridge. Irons was crossing the track within two feet of the westerly end of the westerly car when the conductor called and warned him. He was then within four feet of the end of the float. Either then or before the draft started to move (a mooted question) he grabbed a block with which to chock a car wheel but the block, not holding, slid in front of the wheel. To make it hold, Irons

stooped down and held it against the wheel, walking backwards in doing so. In this position and in this movement he walked about four feet. Thus the remaining space on the float was consumed. He was then either on the float at its edge or on the bridge at its edge. Then the block caught one of his feet and the frog or a rail caught his other foot and he fell under the moving car. He grabbed the axle of the second pair of wheels and an instant later a wheel ran over his leg. Still holding on to the axle he stopped when the draft hit the first pusher on the bridge and extricated himself from between the wheels of the westerly car and the easterly pusher. On this evidence, even conceding a latitude in the figures favorable to the defendant, or on other evidence that made the span between the pusher and car a few feet longer, it is certain that the evidence did not disclose to the learned trial judge the place of the accident, whether it was on the bridge or the float, whether on land or water, and, accordingly, did not prove that the accident was maritime and that the case came under the Longshoremen's and Harbor Workers' Compensation Act. The most that the evidence showed him was that the occurrence began on the float and ended on the bridge, and that the accident happened somewhere during the occurrence. On this evidence the defendant, on its motion to open the judgment for want of jurisdiction, did not prove as an essential fact that the disability of the plaintiff resulted from an injury occurring upon navigable waters of the United States even if before the injury he was engaged in a maritime operation of loading the float with cargo in cars.

The judgment is affirmed.