**SIERACKI v. SEAS SHIPPING CO., Inc., et al. (two cases).**

**Nos. 8706, 8722.**

Circuit Court of Appeals, Third Circuit.

Argued Feb. 13, 1945.

Decided April 11, 1945.

Benjamin O. Frick, of Philadelphia, Pa. (Philip H. Strubing and Evans, Bayard & Frick, all of Philadelphia, Pa., on the brief), for Bethlehem Companies.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman & Goldstein of Philadelphia, Pa., on the brief), for Sieracki.

Thomas E. Byrne, Jr., of Philadelphia (Rowland C. Evans, Jr., and Krusen, Evans & Shaw, all of Philadelphia, Pa., on the brief) for Seas Shipping Co.

Before PARKER and GOODRICH, Circuit Judges, and BARD, District Judge.

GOODRICH, Circuit Judge.

This is an action for personal injuries. Plaintiff, a longshoreman, sued on the law side, Seas Shipping Co., Inc., owner of the steamship, Robin Sherwood, to recover damages for injuries he sustained while loading the vessel. Seas Shipping Co. impleaded the two Bethlehem companies whose connection with the facts is described below. The plaintiff then amended his complaint to include the claim against each of the two third-party defendants. The trial was to a court with a jury but before the testimony was completed it was stipulated that the plaintiff's damages were $9,500 and that the court should determine liability as though a jury trial had been waived at the outset. The District Court decided in favor of the plaintiff against the Bethlehem companies and in favor of Seas Shipping Co., Inc. The plaintiff appeals, at No. 8722, from the judgment against him and in favor of Seas Shipping Co., Inc.

The Bethlehem companies, at No. 8706, appeal from the judgment against them in favor of the plaintiff. The appeals were heard together. The following statement of the basic operative facts is taken from the opinion of the Court below [57 F.Supp. 724, 725]:

"The defendant, Bethlehem Steel Company, was awarded a contract by the United States Maritime Commission to build the steamship Robin Sherwood. That company subsequently sublet a portion of the job to the defendant, Bethlehem Sparrow's Point Shipyard, Inc. The latter undertook to assemble and install on the vessel, among other things, certain cargo gear and particularly, the ten-ton boom and tackle at number 5 hatch.

"Upon completion of the vessel in June of 1941, the ten-ton boom was tested by lifting a dead weight of twelve and a half tons, and the vessel was then turned over to the defendant, the Seas Shipping Co., Inc., which had purchased it from the Maritime Commission.

"The vessel was in service approximately eighteen months when it called at the port of Philadelphia on December 23, 1942, to load parts of freight cars for shipment abroad. The plaintiff was one of a number of longshoremen who were engaged to load the cargo into the vessel. After rigging the gear on the ten-ton boom, which had never been used up to this time, the longshoremen lowered one piece of freight into the hold of the ship and were engaged in stowing away the second part of the freight car, the weight of which was not in excess of 8.2 tons, when the shackle which supported the ten-ton boom broke, causing the boom and tackle to come down and injure the plaintiff."

I. Liability of the Bethlehem Companies.

The Bethlehem Steel Company constructed the ship on contract with the United States Maritime Commission, which in turn sold it to Seas Shipping Co. Bethlehem Sparrows Point Shipyard, Inc. was a sub-contractor which installed the defective equipment. As the Court below stated, the case is one of maritime tort. Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208, 51 L.R.A.,N.S., 1157. Nevertheless, the principles in MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, Ann.Cas.1916C, 440, are broadly applicable, that law having become

so widely accepted as to be construed as a part of the general law of torts, maritime as well as common law. They are summed up in Restatement, Torts § 395 as follows:

"A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

That the appliance here in question was one concerning which great precautions were necessary in order to comply with the requirements of reasonable care is clear. It is found as a fact that the defendants all knew that the shackle in question was to be used to support the ten-ton boom. The failure of this shackle to support the boom and any load which it might at the time be hoisting would thereby endanger human life as well as property. It is equally clear that plaintiff was one of the persons within the ambit of the protection of the duty imposed when he was assisting to load the ship. He was engaged in the very thing for which the apparatus was designed and was one of those "whom the supplier should expect to be in the vicinity of its probable use * * *".

■ Neither of these points is questioned by the defendants Bethlehem. It is urged, however, that the evidence is insufficient to establish negligence on their part. It appears that the shackle in question was purchased by the Bethlehem companies from the MacMillan Company. The latter company did not manufacture the shackle, but purchased it from some other company whose name has not been disclosed. That fact was also present in MacPherson v. Buick Co., supra, and the legal conclusion expressed in that case concerning it is also found in Restatement, Torts § 400. The purchase of this article, which became a component part of the ship, from outside sources does not relieve the defendants from liability as manufacturer.

■■ The argument for the Bethlehem companies stresses the point that they took all the precautions and safeguards customarily used in the shipbuilding industry to guard against defective material and cargo gear purchased from others. But the Court found as a fact that "There is no evidence as to what inspections or tests are usually made upon such shackles in shipyards generally." That seems to us to dispose unfavorably for the Bethlehem companies of the argument that they should not be liable because they followed the common and usual precautions. Furthermore, even if they had, that would not necessarily excuse them for while usage is relevant in determining whether reasonable care is exercised it is not conclusive in (with one or two exceptions) establishing compliance with the legal standard. Texas & Pacific R. Co. v. Behymer, 1903, 189 U.S. 468, 23 S.Ct. 622, 47 L.Ed. 905; The T. J. Hooper, 2 Cir., 1932, 60 F.2d 737, certiorari denied, 1932, 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571; Bohlen, Francis H., Some Recent Decisions on Tort Liability, 4 Tulane Law Review 370 (1930); 2 Wigmore on Evidence (3d Ed.) § 461.

■ The trial judge concluded that sufficient care had not been used. He pointed out that an x-ray test would have disclosed the defect (a "pipe" inside the metal) and pointed out that this particular shackle was a key piece on the largest boom on the ship. He also found that a test by tapping or striking with a piece of metal would have disclosed, to the ear of an expert, something which would have put him on notice. This conclusion, as would be expected, was not received with enthusiasm by the Bethlehem companies. Nevertheless, we think it is sound. So far as it appears, the only test to which this shackle was subjected was the lifting test which was made upon the completion of the vessel. The piece of apparatus was critical and the defect in it subjected life and property to great danger. Other and more searching tests, as applied to this particular piece, could have been made. They should have been made in the exercise of reasonable care. The conclusion of the trial judge was correct.

II. Liability of Seas Shipping Co., Inc.

There are two parts to the argument for the plaintiff with regard to liability of the ship owner. The first is based on negligence. The trial judge found the ship owner free from negligence and we agree with him. If there is any liability for negligence upon Seas Shipping Co. it must be because of some failure to inspect this shackle at the time it received the ship from the Maritime Commission. During the period between its

receipt and the accident the shackle, as well as other parts of the ship, was properly cared for and inspected visually. But the fact was found, and we agree with the finding, that the most meticulous visual inspection would not have disclosed any defect.

■ The Seas Shipping Co. is not guilty of negligence, therefore, unless it failed to use due care to discover the defect in this shackle. It could not have found it by visual inspection. Doubtless it could have been discovered had the owner torn down the various pieces of apparatus on the ship and subjected them to the sound test or the x-ray test or, any other test which might have disclosed the defect. We do not think that reasonable care required such effort on the part of the owner. The master of the ship was present when the lifting test was made. The owner purchased the ship from the Maritime Commission which, in turn, had contracted for its construction with a reputable manufacturer. We do not think the buyer, under these circumstances, is required to tear down the thing bought and subject it to independent tests in order to be exercising due care. One can hardly picture the buyer of an automobile taking it to pieces and testing its various component parts to see whether it is safe for an employee to drive. Nor do we think the ship owner is required to either. We agree with the trial judge, therefore, that there was no showing of want of reasonable care on the part of the ship owner.

■ This leaves us with the last and most difficult question in the case. Granted that no negligence on the part of the ship owner has been shown, is the owner, nevertheless, liable to this longshoreman because the defective shackle made the vessel unseaworthy? The District Court found as a fact that the accident occurred by reason of the unseaworthiness of the vessel. We think it is undisputed that if the falling boom had hit one of the sailors the injured seaman could have recovered from the ship's owner, or the ship, on the basis of breach of warranty of seaworthiness, that warranty not being dependent upon a showing of negligence at all. Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; The H. A. Scandrett, 2 Cir., 1937, 87 F.2d 708. Is the longshoreman entitled to this same protection? It is clear that so far as the "warranty" depends upon contract, plaintiff was not a party to a contract with the shipowner. He was employed by the independent stevedore contractor. This does not necessarily settle the question. The term "warranty" used in this connection is a term used to describe a resulting legal liability, not to give a reason for it. The legal liability is not based upon fault, but is in the nature of insurers' liability, rooted in the admiralty law.

What, then, are the reasons for and against the application of the protection against injuries from unseaworthiness to one engaged in loading and stowing a ship's cargo? There is no question that in fact such service is necessary in the performance of the business of the ship. Formerly the work was done by the ship's crew, but owing to the demand for rapidity and special skill it has become a special service, one which has been called "as clearly identical with maritime affairs as are the mariners". And so an injury to a stevedore comes within the classification of a marine tort. Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208, 51 L.R.A.,N.S., 1157. It seems, therefore, that when a man is performing a function essential to maritime service on board a ship the fortuitous circumstances of his employment by the ship owner or a stevedoring contractor should not determine the measure of his rights. This is the very basis on which the Jones Act, 46 U.S.C.A. § 688, was held applicable to give redress to an injured stevedore in International Stevedoring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, commented upon in 27 Col.L.Rev. 211. See also Uravic, Administratrix v. F. Jarka Co., Incorporated, et al., 1931, 282 U.S. 234, 51 S.Ct. 111, 75 L.Ed. 312.

On the other hand, the stevedore loading or unloading a ship has only temporary employment thereon and he is a stranger to the contract between his employer and the ship owner. In so far as peculiar obligations imposed by the admiralty law for the seaman's protection rest upon the fact that the men are bound to the vessel for the remainder of the voyage, the stevedore does not fall within the reason for the protection given. Thus an injured employee of the contracting stevedore has been denied recovery for maintenance and cure. C. Flanagan & Sons, Inc. v. Carken, Tex.Civ.App., 1928, 11 S.W.2d 392, commented upon in 42 Harv.L.Rev. 820.

It seems to us that the weight of the argument favors an extension of the protection to the stevedore's employee during the period when he is actually engaged upon a

ship in the loading or unloading thereof. He is working in marine employment and is subject to all its risks for the time being. The fact that the exigencies of modern commerce have called in additional help for loading and unloading does not make the undertaking any less a marine transaction and rightly subject to the rules of law for the protection of workers who take the risks of such transactions. We do not hold that a stevedore is entitled to everything that a seaman may claim. All we are deciding now is that if he is injured on the ship in the course of unloading or loading the vessel he may have redress for a defect caused by its unseaworthiness.

We have found no decision which gives consideration and discussion to the point now before us. There are statements and assumptions each way. In W. J. McCahan Sugar Refining & Molasses Co. v. Stoffel, 3 Cir., 1930, 41 F.2d 651 Judge Woolley says, page 654, "The law regards a longshoreman or stevedore, injured while engaged in maritime service aboard a ship lying in navigable waters, as a seaman with all his peculiar rights and immunities." In Cassil v. United States Emergency Fleet Corporation et al., 9 Cir., 1923, 289 F. 774, 775, the court says that a stevedore, injured while loading a ship could hold the owner of the vessel "only on the theory that the vessel was unseaworthy in respect to the instrument whereby his injuries were occasioned." On the other hand, there are a number of decisions in which it is either assumed, or stated, without discussion or elaboration, that the duty owed by the ship owner to the employee of the stevedore is only that of reasonable care. In other words, the responsibility is the same as that of any occupier of premises toward a business guest. Panama Mail Steamship Co. v. Davis, 3 Cir., 1935, 79 F.2d 430 (in this case the standard of reasonable care as a measure of duty was agreed upon by both sides); Bryant v. Vestland, 5 Cir., 1931, 52 F.2d 1078; Luckenbach S. S. Co., Inc., et al. v. Buzynski, 5 Cir., 1927, 19 F.2d 871, reversed on another ground, 1928, 277 U.S. 226, 48 S. Ct. 440, 72 L.Ed. 860; The Howell, 2 Cir., 1921, 273 F. 513; The Student, 4 Cir., 1917, 243 F. 807, certiorari denied, 1917, 245 U.S. 658, 38 S.Ct. 14, 62 L.Ed. 534; Jeffries et al. v. DeHart, 3 Cir., 1900, 102 F. 765; The Mercier, D.C.Or. 1933, 5 F.Supp. 511, affirmed, 9 Cir., 1934, 72 F.2d 1008.

It will be observed that the numerical weight of decision in the lower federal courts seems against the view here expressed, although, as stated above, the point has been assumed rather than concluded as a result of the examination of principle and precedent. The logical trend of the Supreme Court authority is, we think, in favor of extending to the stevedore the rights of a seaman when engaged in marine employment. On principle we think he should have these rights, at least, to the extent called for by the facts of this case and we so decide.

The judgment of the District Court is affirmed as to the Bethlehem companies, No. 8706, and reversed as to Seas Shipping Co., No. 8722.