## PRICE v. KOSMIN.

### No. 8772.

Circuit Court of Appeals, Third Circuit.

Argued April 5, 1945.

Decided April 25, 1945.

**103**

Joseph Joffe, of New York City, on the brief, for H. Schnell & Co., a creditor.

Milford J. Meyer, of Philadelphia Pa. (Albert M. Hankin, of Philadelphia, Pa., on the brief), for appellant.

Hirsh W. Stalberg, of Philadelphia, Pa., for appellee.

Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The background of this case is set out at length in our previous opinion in the matter, Moonblatt v. Kosmin, 3 Cir., 139 F.2d 412. We there decided that the Bankruptcy Court had jurisdiction to adjudicate the rights of the trustee and the appellee to money obtained by the appellee from the sale of stock allegedly given her by her husband, the bankrupt, in partial payment for certain advances made by her to him or to his business. Thereafter in further proceedings, the District Court adopted, among others, the following findings of fact by the Referee:

"10. It is therefore fair to presume that the stock was transferred, if ever, immediately prior to the payments to Mrs. Kosmin, which, as hereinbefore stated, was after the petition in bankruptcy was filed.

"11. The Respondent produced checks which indicated that the sum of $6707.59 was disbursed, leaving a balance in said fund as of June 3rd, 1941, the day the petition for a turnover was filed of $1591.-06. The Trustee does not dispute the fact that checks for said amount cleared through the depository and there is no allegation of fraud and collusion between the Respondent and the respective payees."

The District Court also adopted the following conclusions of law of the Referee:

"1. That the Bankruptcy Court has jurisdiction to determine the instant issue in a summary proceeding.

"2. Under the circumstances, the trustee had a lien on the proceeds of said stock under the provisions of Sec. 70, subdiv. C of the Bankruptcy Act [11 U.S. C.A. 110, sub. c].

"3. Hence by failure to have the stock or certificates delivered to her prior to the bankruptcy, she, the Respondent, did not acquire title to said stock, which remained vested in the bankrupt.

"4. That the said Bertha Kosmin received the proceeds of the sale of the stock of the Tiger Food Corporation and the proceeds of the sale of the Mack truck and the DeSoto automobile, with fraudulent intent to defraud the creditors of her husband Ben Kosmin."

The judgment of the District Court reads as follows:

"Now, October 11, 1944, it is Ordered and Decreed that Bertha Kosmin turn over to Joseph M. Price, Trustee in Bankruptcy of the Estate of Ben Kosmin, the sum of $1591.06 within ten days from the service of a copy hereof, which said amount the said Bertha Kosmin fraudulently conceals and withholds from the said Trustee in Bankruptcy."

From the proceeds of the sale of the above mentioned stock Bertha Kosmin paid out: $685.80 as part of the purchase price of an automobile; $424.32 in premiums on the bankrupt's life insurance policies; $4,190.67 in repayment of loans obtained on those policies by the bankrupt; and an additional $169.12 for premiums on said policies after the trustee's petition for a turnover order had been filed. These items total $5,469.91. The trustee contends that the turnover order should be enlarged so as to include this sum.

Though the appellee has not appealed from the judgment of the District Court, it is urged on her behalf that finding of fact No. 10 and conclusion of law No. 2, both above quoted, are erroneous.

Morley Const. Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593 is cited as authority for the right to so argue at this time. Under the present particular facts, it is questionable that the Morley decision justifies appellee's contention, but even assuming that it does, there is ample evidence in the record supporting the above finding of fact and conclusion of law.

 Appellee further urges that, as found by the District Court, since the money for the automobile and for the insurance premium payments, was actually disbursed by Mrs. Kosmin and is not now under her control, the turnover order should not be enlarged so as to embrace such funds. The direct answer to this is found in the opinion of this court in the case of In Re Eisenberg, 3 Cir., 130 F.2d 160, where Judge Maris for the court, said page 162:

" * * * the view consistently held by this court, is that in proceedings for a turnover order the sole burden upon the trustee is to prove that the person being proceeded against had possession or control of property belonging to the bankrupt estate at the time of the filing of the petition in bankruptcy and that he failed to deliver this property to the trustee. If the court grants the turnover order and the person to whom it is directed fails to comply with it the trustee may seek to compel compliance through contempt proceedings. It is only in these proceedings that the issue arises as to the ability of the person to whom the turnover order was directed to comply with it. It is then open to him to show that by reason of events occurring since bankruptcy he is unable to do so. This practice was described with precision and clarity by Judge McPherson, sitting in the district court, in the case of In re Epstein, D.C.Pa.1913, 206 F. 568, affirmed sub nomine Epstein v. Steinfeld, 3 Cir., 1914, 210 F. 236, and was followed, inter alia,

in Schmid v. Rosenthal, 3 Cir., 1916, 230 F. 818; Frederick v. Silverman, 3 Cir., 1918, 250 F. 75, and Toplitz v. Walser, 3 Cir., 1928, 27 F.2d 196. In Oriel v. Russell, supra, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, Chief Justice Taft took cognizance of the divergent views upon turnover and contempt proceedings. Of the eight cases which he cited as appearing to the court to set forth the 'more nearly * * * correct view' four were the cases from this court to which we have just referred. Furthermore he followed our practice of separating the issues dealt with in turnover and contempt proceedings when he stated (278 U.S. [358 at] page 366, 49 S.Ct. [173 at] page 175, 73 L.Ed. 419): 'In the two cases before us, the contemnors had ample opportunity in the original hearing to be heard as to the fact of concealment, and in the motion for the contempt to show their inability to comply with the turnover order.' "

See also In re Berkeley Press, Inc., 3 Cir., 130 F.2d 163.

 The appellee attempts to distinguish the Eisenberg decision by asserting that here the appellee took it upon herself to show inability to comply. In such argument, the appellee disregards the plain language of that opinion which states that it is only in the contempt proceedings "that the issue arises as to the ability of the person to whom the turnover order was directed to comply with it."

The judgment of the District Court is reversed and the cause is remanded to that court with directions that the amount of money in the order and decree which Bertha Kosmin is found to fraudulently conceal and withhold from the trustee and which said Bertha Kosmin is ordered and directed to turn over to Joseph M. Price, Trustee in Bankruptcy of the Estate of Ben Kosmin, be increased from $1,591.06 to $7,060.97.