**BRUSZEWSKI v. ISTHMIAN S. S. CO.**

No. 3632.

District Court, E. D. Pennsylvania.

Dec. 4, 1945.

Freedman, Landy & Lorry and Abraham E. Freedman, all of Philadelphia, Pa., for plaintiff.

Krusen, Evans & Shaw and Thomas E. Byrne, Jr., all of Philadelphia, Pa., for defendant.

GANEY, District Judge.

This is a motion to vacate a judgment entered on a directed verdict on behalf of the defendant at the close of all of the evidence in the case and to enter a judgment on behalf of the plaintiff and to order a retrial limited to the question of damages.

The plaintiff on November 9, 1943 was a longshoreman in the employ of B. H. Sobelman Company, a stevedoring contractor, who together with eight other men comprised a gang of nine who were ordered to report on board the vessel, George Read, lying at Richmond, Pier G. in the City of Philadelphia. The testimony shows that Frank Olsen, who was supervising the loading of the ship for the Isthmian Steamship Company, had reported to him, that the boom on the George Read was broken, which was delaying the loading of the vessel. He then went to the officer in charge of the ship and was informed by him that he had no men available to do the work— the boatswain testifying that the repair of the boom was a job for the ship yard. He then instructed George Toner, superintendent of stevedores for B. H. Sobelman Company, to procure a gang of men to repair the broken boom. The plaintiff as has been indicated was one of the gang who reported on the George Read and proceeded to repair the broken boom, which was the only job they were called upon to do. The testimony shows that a member of the gang in the employ of Sobelman Company was designated to operate the winch or steam-hoist, and the other members of the gang with the help of some of the crew began to lash up the boom preparatory to laying it on the in shore side of the vessel, the main portion of the boom having snapped about 15 feet above the gooseneck and was lying across the No. 1 hatch. The testimony further shows that after the boom had been lashed up, at the direction of both the boatswain of the ship, and the foreman of the Sobelman gang, the winch operator was signaled to raise the broken boom. As the broken boom was being raised, the plaintiff walked across the deck underneath the boom that was being lifted and while so doing was struck on the head by a block which had gotten loose from the ropes to which it was attached to the boom. The block fell some 25 or 30 feet and weighed some forty pounds and rendered the plaintiff unconscious causing him serious injuries.

The vessel was being operated under a so-called General Agency agreement between the United States acting through the Administrator of the War Shipping Administration and the Isthmian Steamship Company. The vessel was serviced by the defendant pursuant to the terms of the agreement, its purpose being to enable the government in its wartime activities to utilize the facilities and skill of experienced ship operators to whatever extent the exigencies of war might prescribe. The contract, among other things, designated the

defendant as the general agent of the United States, and obligated it "to manage and conduct the business for the United States in accordance with such directions, orders or regulations as the latter has prescribed or from time to time may prescribe, and upon the terms and conditions herein provided of such vessels as have been or may be by the United States assigned to and accepted by the general agent for that purpose". It was also provided inter alia that the agent should (a) maintain the vessel in such trade as the United States may direct, subject to its order with respect to voyages, cargo, freight charges, etc.; (b) collect all moneys due the United States and to deposit, remit, disburse and account for the same; (c) equip, victual, supply and maintain the vessel subject to direction and inspection of the United States; (d) procure the vessel's Master, subject to the approval of the United States and when so engaged he was to be an agent and employee of the United States and to exercise full control, responsibility and authority with respect to the navigation and management of the vessel. The general agent was also required to procure and make available to the Master for engagement by him such officers and men as were needed to fill the complement of the vessel, such men to be procured through the usual channels and according to the customary practices of commercial operators, as well as upon prevailing terms and conditions in the services in which the vessel was engaged. The officers and men were to be subject to the Master's orders and were to be paid in the customary manner with funds provided the general agent by the United States; (e) to issue customary freight contracts and bills of lading upon prescribed terms and conditions; and (f) to maintain the vessel in an efficient state of repair under the supervision of the United States, as well as to perform other services not immediately pertinent to the question now before the court.

In directing a verdict for the defendant at the close of all of the evidence, the court first resolved that the general agency agreement constituted the defendant an owner "pro hac vice". A studied consideration of the provisions of the general agency agreement leaving possession and management of the vessel to the defendant gave it such a substantial measure of control over its operation, that the powers reserved to the United States under it, were not such as would deprive the defendant of de facto control of the vessel, which, it seems to me, is the criterion to be adopted in making a determination. Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471; McCormick v. Moore-McCormack Lines, Inc., D.C., 54 F.Supp. 399. While it is true that some factual differences obtain here which are not to be found in the Brady case, supra, in that the Master in the instant case was an agent and employee of the United States, and that it was the duty of the general agent to procure and make available to the Master the officers and crew who were to be subject only to the Master's orders, yet these differences it seems to me are not controlling. An over-all consideration shows that with the possession of the vessel in the defendant and its management and direction in it likewise, there was such a sufficient control and responsibility in the defendant as to give it the status of operator, and owner "pro hac vice", and whatever differences obtain in the instant agreement and those which were set out in the agreement under consideration in the Brady v. Roosevelt case, supra, they were not such, as would divest the defendant company here of de facto control.

The next consideration to be determined by the court is whether or not the defendant company being the owner and operator "pro hac vice", was liable for the injuries occasioned to the plaintiff. The plaintiff places main reliance for liability of the defendant upon the unseaworthiness of the vessel, and while he avers certain acts of negligence in his complaint no evidence was introduced at the trial in support of them.

The plaintiff takes the position that since he was employed as a stevedore, he has the same status as a seaman, and recovery may be had against the ship owner on the basis of breach of warranty of seaworthiness, which warranty is not dependent upon a showing of negligence. Mahnich v. Southern Steamship Co., 321 U.S.

96, 64 S.Ct. 455, 88 L.Ed. 561. He further asserts that the doctrine of the assumption of risk is not applicable in this status either. Socony-Vacuum Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265. The asserted authority for this status of the plaintiff is Joseph Sieracki v. Seas Shipping Co., Inc., and Bethlehem Sparrows Point Shipyard, Inc., v. Bethlehem Steel Co.. 3 Cir., 149 F.2d 98, 1945 A.M.C. 407. In that case the court extended the protection afforded seamen to stevedores when actually engaged upon a ship, in the loading or unloading thereof. It did not attempt however to give a stevedore, as such, all the rights, privileges and protection offered a seaman under the maritime law. As a matter of fact the court stated, 149 F.2d 102: "We do not hold that a stevedore is entitled to everything that a seaman may claim. All we are deciding now is that if he is injured on the ship in the course of unloading or loading the vessel he may have redress for a defect caused by its unseaworthiness." In other words, the court, not alone here, but throughout the opinion, limited the extension of the doctrine to the loading and unloading of a ship by a stevedore, or when he is performing a function essential to maritime service upon a ship. Here, however, no such situation obtains. The work the plaintiff was called upon to perform was in no sense essentially a maritime service, as the testimony shows the crew of the ship were not able to do the work and as a matter of fact the boatswain testified that the repair of the boom was a job for a shipyard. Again, the testimony shows that this repair of the boom was the only purpose for which the plaintiff and the rest of the stevedore gang were called to the ship and that it was not an ordinary function for them to perform but in reality an unusual one. Accordingly, the test is not to look at the label given the individual but rather at the nature of the work he is called upon to do and if a finding thereof shows it to be essentially one of a maritime nature, such as loading or unloading a vessel, then the criteria of the Sieracki case are met and the protection of a seaman can be afforded to a stevedore. If, however, the nature of the work is one which seamen do not ordinarily do or can not do, as the testimony here shows, or if it partakes as here of a purely mechanical nature, the repair and removal of a piece of machinery, then it falls without the doctrine of the Sieracki case, supra, and the plaintiff is relegated to a showing of actual negligence on the part of the ship owner in order to recover, as well as to be subject to other defenses such as the doctrine of the assumption of risk. Furthermore, in order to recover on a breach of the warranty of seaworthiness, it is essential that the vessel be unseaworthy with respect to the instrument whereby his injuries were occasioned. Cassil v. United States Emergency Fleet Corporation et al., 9 Cir., 289 F. 774. Here, it would be a contradiction in terms, to say that there was a warranty of seaworthiness of the instrument occasioning the injury, when the instrument was a broken boom, the repair of which was the only reason for plaintiff being on the vessel at all.

Moreover there is the fact that the plaintiff here assumed the risk of his employment. Here, the plaintiff came aboard ship with the sole purpose of repairing a broken boom, an occupation patently dangerous in that the hazardous nature of the work was plainly visible to him. The plaintiff was injured by the falling of a block which was part and parcel of the boom, it being connected with the boom through ropes some 25 or 30 feet up on the boom. In raising the broken boom with the ropes and block connected with it, it is obvious that extreme care should be taken by those engaged in connection with it and it was at the plaintiff's own risk that he walked underneath the boom at the time it was being lifted by the operator of the steamhoist. While it is the general rule that it is incumbent upon the defendant to furnish employees of an independent contractor equipment reasonably safe for the nature of the work they are doing or to give notice of any defects therein, ascertainable by a reasonable inspection, which might constitute a source of danger and which is unlikely to be discovered by those to whom the equipment is supplied, The Henry S. Grove, D.C., 22 F.2d 444; Luckenbach S.S. Co. v. Buzynski, 5 Cir., 19 F. 2d 871; Glover v. Compagnie Generale

Transatlantique, 5 Cir., 103 F.2d 557, nevertheless the defendant owes no duty to notify a defendant of a patent defect, such as a broken boom, which is dangerous when moved about. Here the court finds that it was readily and easily ascertainable from a casual inspection, that the nature of the work was hazardous and the possibility of danger obvious, and recovery is barred because of his voluntary assumption of a known risk. Olszewski v. United Fruit Co. et al., D.C., 34 F.Supp. 113; Scheffler v. Moran Towing & Transportation Co., 2 Cir., 68 F.2d 11; Cunard Steamship Co. v. Smith, 2 Cir., 255 F. 846; Skolar v. Lehigh Valley Railroad Co., 2 Cir., 60 F. 2d 893.

Accordingly, the plaintiff's motion is denied.