Jack GIACONA
v.
CAPRICORN SHIPPING CO.

Ronnie W. EDDINS
v.
CHARENTE STEAMSHIP CO. et al.
Civ. A. Nos. 74–H–983, 74–H–1079.

United States District Court,
S. D. Texas,
Houston Division.
May 30, 1975.

Richard L. Reedy, Powell, Tucker, Kain & Reedy, Houston, Tex., for plaintiff in Civ.A. No. 74–H–983.

Kenneth D. Kuykendall, Houston, Tex., for defendant in Civ.A. No. 74–H–983.

Gus Kolius, Jamail & Gano, Houston, Tex., for plaintiff.

James L. Walker, Fulbright & Jaworski, Houston, Tex., for Intervenor Texas Employers Insurance Assn.

Ben L. Reynolds, Royston, Rayzor, Cook & Vickery, Jack R. Martin, Martin & Sperry, Houston, Tex., for defendant.

*MEMORANDUM AND ORDER*

SINGLETON, District Judge.

In each of the above-styled-and-numbered cases, the plaintiffs have brought on their motion to remand the case to the state court in which each was filed. Since both cases present identical questions of law, this order will serve for both.

Each plaintiff is a longshoreman injured after the effective date of the 1972 amendments to the Longshoremen's and Harborworkers' Act, 33 U.S.C. §§ 901–950. Each sued the shipowner, alleging negligence, in state court, thus taking advantage of the saving to suitors

clause of the Judiciary Act of 1789 [1] which was codified as 28 U.S.C. § 1333.[2]

The defendants removed the actions based upon their contention that the 1972 amendments to the Longshoremen's Act, specifically § 905(b),[3] created a new federal cause of action "arising under the . . . laws of the United States," and thus freely removable pursuant to 28 U.S.C. § 1441.

In order to fully treat the question presented, it is necessary to review the interplay of admiralty jurisdiction and federal "arising under" jurisdiction, 28 U.S.C. § 1331.

The Federal Judiciary Act of 1789 gave to federal courts exclusive jurisdiction over maritime matters, except insofar as it gave to "suitors" the option of pursuing a common-law remedy (now worded "all other remedies") "where the common law is competent to give it" (now worded "remedies to which they are otherwise entitled"). To understand exactly what this means, it must be remembered that in a case in which there is concurrent admiralty and civil-law jurisdiction there are three potential forums in which a case may be heard: (1) federal admiralty, (2) federal civil, and (3) state civil. In an admiralty case the plaintiff has to choose. The choice is usually between federal admiralty and state civil, but if the plaintiff can show either of the prerequisites for regular civil jurisdiction in a federal court, i. e. diversity or federal question arising under a statute of the United States, and jurisdictional amount, then he also has the choice of bringing the suit in federal court on the civil side of the docket.

As we will see, when a case is brought in state civil court and it can satisfy one of the two civil jurisdictional bases in federal court, then pursuant to 28 U.S.C. § 1441 the defendant can remove the cause to federal court. But, if the cause has no federal statutory or diversity jurisdictional basis it cannot be removed from state to federal court. 1A Moore's Federal Practice ¶ 0.167[3.–1] at 372–375.

To view the problem in another way, there are three potential sources of federal jurisdiction in article III of the Constitution: admiralty (*cf.* 28 U.S.C. § 1333); diversity (*cf.* 28 U.S.C. § 1332); and "arising under" the Constitution, laws, and treaties of the United States (*cf.* 28 U.S.C. § 1331). Diversity jurisdiction does not concern us here be-

---

1. " . . . the district courts . . . shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."

2. "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
   (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."
   Both the Reviser's Note to Title 28 and the Supreme Court indicate that there is no intent to change the meaning of the language of the original saving to suitors clause. Madruga v. Superior Court of California, 346 U.S. 556, 560, n. 12, 74 S.Ct. 298, 98 L.Ed. 290 (1954).

3. "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or any-one otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel.
   "The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

cause in neither case is there diversity jurisdiction.

However, in both cases there is no question that there is maritime jurisdiction; both plaintiffs are longshoremen injured on navigable waters through the alleged negligence of the shipowner. Traditionally, the longshoreman has had a cause of action against the shipowner under general maritime law, if the accident occurred on navigable water, as would any person "on board for purposes not inimical to [the shipowner's] legitimate interests,"[4] who is injured on navigable waters through the negligence of the shipowner. Leathers v. Blessing, 105 U.S. 626, 26 L.Ed. 1192 (1882); Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914) [in which the proposition is presumed]; Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Sieracki v. Seas Shipping Co., 149 F.2d 98 (3d Cir. 1945), aff'd, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

The longshoreman's maritime negligence cause of action was recognized long before the Longshoremen's Act was passed and existed quite independent of that Act. Nor was it affected by the Supreme Court's *Sieracki* opinion which extended to the longshoreman seamen's status so that he could reap the benefits of the unseaworthiness doctrine. As a practical matter, however, between the *Sieracki* decision and the 1972 amendments any in-depth treatment of this doctrine in the longshoreman's case was unnecessary because the broader unseaworthiness doctrine was so much easier to prove.

■ Maritime negligence is derived from the "general maritime law," but there are two sources of maritime law as applied in this country. The two components of federal maritime law are the applicable acts of Congress and the "general maritime law" recognized as "self-evident" at the time of the adoption of the Constitution and later by the maritime courts of the United States, *cf.* discussion in Gilmore and Black, ADMIRALTY (1st ed.) § 1–16 at 40–42. That the federal longshoremen's compensation statute, 33 U.S.C. §§ 901–950, is such an "applicable" act of Congress is undisputed. However, as we have seen, the longshoreman's traditional maritime tort action for negligence was not derived from a federal statute but from the general maritime law. A traditional maritime negligence claim, as distinguished from a statutory maritime claim cannot be one "arising under" the Constitution, laws or treaties of the United States. For that reason it cannot be removed under 28 U.S.C. § 1441. Romero v. International Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

■ Federal statutory maritime laws, however, not only confer admiralty jurisdiction, pursuant to 28 U.S.C. § 1333 but also "arising under" jurisdiction, pursuant to 28 U.S.C. § 1331. For that reason, barring some statutory prohibition to the contrary,[5] if a federal statutory admiralty cause of action can satisfy the jurisdictional amount of § 1331 it can be removed from a state court to a federal court pursuant to § 1441(b). *Cf.* discussion J. Moore, Federal Practice ¶ 0.167[3.–3] at 378–379.

The two cases before the court can be successfully removed only if by the 1972 amendments to the Longshoremen's Act Congress intended to abrogate the traditional maritime remedy and to es-

---

4. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632, 79 S.Ct. 406, 410, 3 L.Ed.2d 550 (1959).

5. The Jones Act itself does not expressly prohibit removal, but the general provisions of the Federal Employers' Liability Act are by express terms carried over to the Jones Act. The Federal Employers' Liability Act prohibit removal. Therefore, Jones Act cases brought in state court are not removable. J. Moore, Federal Practice ¶ 0.167[3.–2] at 376–377.

tablish in its place, for longshoremen, an entirely new cause of action which "arises under" the laws of the United States.

No sure intention is shown by either the language of the statute or the legislative history to replace the longshoreman's traditional maritime negligence cause of action with a new federal statutory cause of action. The Congress was obviously concerned with doing away with the unseaworthiness remedy which *Sieracki* had given to the longshoreman. Just as clearly it is evident that the Congress wished to preserve for the longshoreman his negligence remedy. Because historically the unseaworthiness and negligence remedies were so closely associated in cases brought after *Sieracki*, the Committee obviously felt it necessary to clearly spell out its intentions. Those intentions were to preserve the preexisting negligence remedy, but with clearly congressionally defined standards; no language or history indicates that Congress intended to create a remedy to replace the one already in existence.

■ The defendants have two bases for their arguments to the contrary. One is a sentence appearing in U. S. Code Congressional and Administrative News 1972, p. 4705: "Finally, the Committee does not intend that the negligence remedy authorized by the bill shall be applied differently in different ports depending on the law of the State in which the port may be located." Thereafter the Committee expresses its intention that the traditional admiralty concepts of comparative negligence be preserved and assumption of the risk not be applied. One could dispute the precise meaning of the sentence quoted, but the Committee, clearly, is not establishing anything thereby. Comparative negligence and no assumption of the risk are established principles in maritime law. Furthermore, the maritime standard is applied no matter which court turns out to be the forum. Chel-

entis v. Luckenbach S.S. Co., Inc., 247 U.S. 372, 384, 38 S.Ct. 501, 62 L.Ed. 1171 (1918).

Defendants' major argument is that the new standards of negligence set out in the statute differ from the old maritime standards of negligence so drastically that Congress must be creating a new cause of action. The drastic change it is argued is that the new standard allows the shipowners duty of reasonable care to be delegable to others as it is at common law whereas the old negligence cases for maritime tort held the duty of reasonable care was nondelegable. Defendants' assertion is that because the Committee repeatedly describes the duty to the longshoreman in terms comparable to a land-based third party, the Congress intended to create a new cause of action, since cases describing the prior maritime negligence used different standards. Defendants quote extensively from the Committee legislative history:

Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. This would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits.

The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third party damage action is concerned, and not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called such as "unseaworthiness", "non-delegable duty", or the like.

Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness. . Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act . . . .

1972 U.S.Code Congressional and Administrative News, pp. 4701–4704.

It seems more likely to this court that the language just quoted is an indication that Congress intended to clearly set out the standards, as it can do, for maritime negligence for fear of what a court would do in the absence of language clearly indicating that Congress wanted no more no-fault liability of the shipowner by whatever name it would be called by a court.

The cases which defendants have cited to the court for the proposition that the shipowner's duty of care is nondelegable do support that contention. Vanderlinden v. Lorentzen, 139 F.2d 995 (2d Cir. 1944); Anderson v. Lorentzen, 160 F.2d 173 (2d Cir. 1947). Benedict's treatise on admiralty has made the same determination, citing a long list of cases:

> As the doctrine of unseaworthiness is not applicable in respect of injuries to longshoremen and harborworkers, the duties imposed upon the shipowners must be assessed solely from the standard expected of a reasonably careful shipowner. The duties imposed upon him in this capacity and which have been particularized above are nondelegable but there is no basis of liability apart from fault. The shipowner has no burden of an insurer and it is not required to provide an accident proof ship.

1A Benedict on Admiralty (7th ed.) § 114 at 6–12 to 6–13. It is interesting to note that this quotation comes from the edition of Benedict which treats the new 1972 amendments; the treatise's interpretation of the effect of the amendments is quite different from defendants' interpretation.[6]

When the Committee expresses its desire to do away with the nondelegable duty, it seems evident from the context that their language is formed out of an abundance of caution. Their concern is for the distinct possibility, given the history of federal court rulings on the subject, that, the courts will construe the nondelegable admiralty negligence as a cause of action amounting to unseaworthiness, a no-fault liability.

The Committee was not so concerned with what maritime negligence standards were at the time they were hammering out the bill as what the standards might become. The quotation from the Senate hearings on the amendments, which follows, strongly indicates that that was the case:

> MR. SCANLAN:
>
> It is a matter of very careful draftsmanship to find the right language so that we don't find ourselves back with third-party cases all over again, not on the bases of unseaworthiness, but on the basis of maritime negligence, which some court is going to say is absolute liability, the same as unseaworthiness. That's the problem, Mr. Chairman, that I am trying to direct my attention to.

Senate Hearings, Subcommittee on Labor and Public Welfare, 92d Congress, 2d Sess. at 274 (1972). Congress wanted to eliminate unseaworthiness for longshoremen and wanted to prevent the same benefits of unseaworthiness from

---

6. As can be readily seen from the above quotation and the discussion which follows in Benedict, however, if the Congress has so drastically changed the law on maritime negligence so as to establish a new cause of action, the fact has not made much of an impression upon Mr. Jhirad, author of the seventh edition of Volume 1A of Benedict on Admiralty. It is clear, at least from Mr. Jhirad's discussion of the subject, however, that maritime negligence never swept as broadly as unseaworthiness.

accruing to the longshoremen under a different name, that of "negligence." The language defendant uses to support its argument is more precisely seen as part of the effort to do away with unseaworthiness than the effort to create a new heretofore unknown remedy.

■ Accordingly, the maritime negligence referred to in 33 U.S.C. § 905(b) is not a creature of Congress, but of the general maritime law. As such it has no "arising under" jurisdictional basis and for that reason cannot be removed from state to federal court.

The cases having been improperly removed to federal court, it is hereby ordered, adjudged, and decreed that Jack Giacona v. Capricorn Shipping Co., C.A. 74–H–983, be remanded to the 164th Judicial District Court of Harris County, Texas.

Furthermore, it is ordered that Ronnie W. Eddins v. Charente Steamship Co., E & J Harrison, Ltd., and Houston Mooring Co., Inc., C.A. 74–H–1079, be remanded to the 190th Judicial District Court of Harris County, Texas.